UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RICHARD-ENRIQUE: ULLOA,

                      *Plaintiff*,

         -against-

WELLS FARGO BANK, NA, SUPREME COURT OF THE STATE OF NEW YORK IN AND FOR ULSTER COUNTY, DOES 1-10, INCLUSIVE

                      *Defendants*.

10-CV-00345

GLS / RFT

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12 (b)(1 ) AND (6)**

 

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendant Supreme Court of the
   State of New York
The Capitol
Albany, New York  12224-0341

Stephen M. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 103129
Telephone:  (518) 473-7184
Fax:  (518) 474-2221 (Not for service of papers)

Date: March 31, 2010

**Table of Contents**

Preliminary Statement..............................................................................................................1

FACTS....................................................................................................................................2

ARGUMENT..........................................................................................................................3

    POINT I

        Defendant Ulster County Supreme Court Joins In And Adopts
        The Arguments of Its Co-Defendants That This Court Lacks
        Subject Matter Jurisdiction.................................................................................3

    POINT II
        Defendant Ulster County Supreme Court Is Absolutely Immune
        From This Suit ………………………...………….....................………...3

    POINT III
        Plaintiff Fails To State A Claim Under 42 U.S.C. 1983 Against
        Defendant Ulster County Supreme Court………… .. ..…………………………7

    POINT IV
        This Court Should Abstain From Exercising Subject-Matter
        Jurisdiction Under *Younger v. Harris*, 401 U.S. 37 (1971) Or
        *Colorado River Water Conservation District v. United States*,
        424 U.S. 800 (1976).…………………… ……….…………………………...…8

        1. *Younger* Abstention………… .………………………………..…8

        2. *Colorado River* Abstention… ……………………………………..…10

CONCLUSION  …………………………………………………………………...…13

**Preliminary-Statement**

This is an action brought by state-court litigant against his state-court adversary and the state court itself, arising out of that state-court litigation. It was commenced on February 1, 2010 by the filing of a Complaint. The action was initiated in the United States District Court for the District of Columbia which transferred the action to this Court by Order dated March 4, 2010. This action concern actions taken by co-defendant Wells Fargo Bank, NA, (hereinafter "WF") after the default on a note and mortgage executed in its favor by the plaintiff and another, Rivera. The mortgage default is the subject of a foreclosure proceeding pending in the defendant New York State Supreme Court In and For the Ulster County (hereinafter, "Ulster County Supreme Court" or "State Court") titled *Wells Fargo Bank, NA, Plaintiff v. Richard Enrique Ulloa et al.*, Index number 4179-09. On March 24 2010, State Court granted summary judgment to WF on its claim. See Decision and Order of the hon. Richard M. Platkin, A.J.S.C. attached as exhibit A. A final judgment has not yet been rendered in that foreclosure action which remains pending in defendant State Court. Defendant State Court now moves for dismissal under FRCP 12 (b)(1) and (6) on the grounds that (1) it is absolutely immune from suit; (2) the Eleventh Amendment bars plaintiff's claim for punitive damages against it; (3) the plaintiff fails to state a claim against it under 42 U.S.C. 1983; and (4) this Court should abstain from exercising jurisdiction over this matter pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) or *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

**FACTS**

The Complaint (styled as "Verified Complaint For Quiet Title And For Injunctive Relief") is prolix and difficult to comprehend. It presents no coherent legal theory and even the asserted basis for federal jurisdiction appears unfathomable. What is clear is that the subject

matter concerns a mortgage on property located at 22 Ridge Mountain Road in Stone Ridge, New York (Complaint, page 7 paragraph 8) and the pendency of a foreclosure action by co-defendant WF in co-defendant Ulster County Supreme Court with regard to that property. Complaint, pages 4, 6, 14, 16 ("THE SUPREME COURT OF THE STATE OF NEW YORK, IN AND FOR ULSTER COUNTY is named as a Defendant because they have allowed the other Defendants to file an unlawful foreclosure and eviction even though [WF] and other Doe Defendants do not have standing to sue for foreclosure or eviction without producing the original note."), and 29. The requests for equitable relief include abatement of any and all claims of any right title or interest in the subject property, abatement of all mortgage payments, abatement of the State court foreclosure action, an order compelling the defendants to give up any current attempts to sell the subject premises, and an order requiring co-defendant WF to re-convey title and to issue a document stating that the debt is satisfied. Plaintiff also seeks an award of punitive damages in the amount of Eighty Thousand ($80,000.00) Dollars, the costs of this action, and leave to amend the Complaint after discovery is completed. Complaint, pages 55-57.

## ARGUMENT

### Point I

**Defendant Ulster County Supreme Court Is Absolutely Immune From This Suit.**

At common law, the government (the States and municipalities) were immune from suit for the tortious conduct of their agents. In New York, the Court of Claims is the exclusive forum among New York's state courts for litigating claims for money damages against the State. See New York Constitution, Art. VI, § 9 ("The court [of claims] shall have jurisdiction to hear and determine claims against the state or by the state against the claimant or between conflicting claimants as the legislature may provide."); New York Court of Claims Act ("CCA") § 8 (2009)

("The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article."); *Morell v. Balasubramanian*, 70 N.Y.2d 297, 300 (1987) ("Since the adoption of the Court of Claims Act [in 1929], the State has been subject to suit for damages, but only in the Court of Claims."). The CCA § 8 waiver and its attendant limitations dispenses with the need for special enactments authorizing particular causes of action against the State and its subdivisions.

In light of the § 8 waiver, the liability of governmental entities is the same as that of an ordinary negligence defendant, where governmental employees are engaged in what the courts have termed "proprietary" activities. A distinction is made for activities that are categorized as "governmental", and sovereign immunity still applies. Proprietary activities are those activities in which the government has displaced or supplemented traditionally private enterprises, such as the maintenance of highways, streets and sidewalks, provision of transportation services, and provision of medical care. The definition of governmental activities encompasses activities which are uniquely governmental, including the operation of courts. The government-proprietary analysis is often conceptually complex, since a particular set of circumstances may embody aspects of both types of activities, but it is clear that operating a court is a governmental, not a proprietary, function.

**Sovereign Immunity In Federal Courts.**

> "The Eleventh Amendment states: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' U.S. Const. amend. XI; see also [*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)] (explaining that "[a]lthough the Amendment, by its terms, bars only federal suits

against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens as well as state court actions against state governments" (citation omitted)). Stated as simply as possible, the Eleventh Amendment means that, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity," or unless Congress has "abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Woods*, 466 F.3d at 236. In the instant case, there is no suggestion of congressional abrogation or state acquiescence, and so our inquiry is limited to the question of whether the New York State Unified Court System is, constructively, 'one of the United States,' U.S. Const. amend. XI.

*Gollomp v. Spitzer*, 568 F.3d 355, 365-366 (2d Cir. 2009)

The Eleventh Amendment bars not only actions against a state *qua* state, but also against a state's agencies.

As we have previously explained, '[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.' *Woods*, 466 F.3d at 236 (internal quotation marks omitted). Accordingly, 'a governmental entity is entitled to Eleventh Amendment immunity only if it is more like an arm of the State, such as a state agency, than like a municipal corporation or other political subdivision.' Id. (internal quotation marks omitted). Courts frequently consider many factors to determine whether an entity is an 'arm of the state.' See, e.g., *Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009) (considering '(1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state' (quoting *McGinty*, 251 F.3d at 95-96) (internal quotation marks omitted)). However, the ultimate inquiry involves an overall assessment of 'the relationship between the State and the entity in question.' *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997). A cardinal component of this relationship is 'the question whether a money judgment against a state instrumentality or official would be enforceable against the State.' Id. at 430; see also *Gorton*, 554 F.3d at 62 (inquiring, after an assessment of other factors, 'whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk,' and stating that '[i]f the answer is . . . in doubt, a concern for the state fisc will control' (internal quotation marks omitted)); *Woods*, 466 F.3d at 238 (observing that 'a claim of Eleventh Amendment immunity will occasion serious dispute only where a relatively complex institutional arrangement makes it unclear whether a given entity ought to be treated as an arm of the state' (internal quotation marks omitted)).

*Gollomp*, 568 F.3d at 366

**Absolute Immunity.**

As noted previously, New York's wavier of sovereign immunity is conditional.  It retains its sovereign immunity for those activities which are regarded as "governmental":

> "With the enactment of the Court of Claims Act § 8, the  State waived that immunity which it had enjoyed solely by   reason of its sovereign character (see, *Weiss v Fote*, 7 NY2d 579, 585-586; *Bernardine v City of New York*, 294 NY 361). While assuming liability under the rules applicable to corporations and individuals for the actions of its officers  and employees in the everyday operations of government (see, e.g., *Wingerter v State of New York*, 79 AD2d 817, affd 58 NY2d 848; *McCrink v City of New York*, 296 NY 99; *Bernardine v City of New York*, supra), the State retained its immunity for those governmental actions requiring expert judgment or the exercise of discretion (see, *Friedman v State of New York*, 67 NY2d 271; *Weiss v Fote*, supra). **This immunity, we have held, is absolute when the action involves the conscious exercise of discretion of a judicial or quasi-judicial nature (see,** *Tarter v State of New York*, **68 NY2d 511, supra;** *Tango v Tulevech*, **61 NY2d 34, supra).**
>
> The absolute immunity for quasi-judicial discretionary actions is founded on public policy and is generally said to reflect the value judgment that the public interest in having officials free to exercise their discretion unhampered by the fear of retaliatory lawsuits outweighs the benefits to be had from imposing liability (see, *Rottkamp v Young*, 21 AD2d 373, 376, affd 15 NY2d 831; *Gregoire v Biddle*, 177 F2d 579 [2d Cir], cert denied 339 U.S. 949; 2 Harper and James, Law of Torts § 29.10, at 1641). Not all discretionary actions, however, are accorded absolute immunity (see, *Tarter v State of New York*, supra, at 519).
>
> Whether an action receives only qualified immunity, shielding the government except when there is bad faith or the action taken is without a reasonable basis (see, e.g., *Friedman v State of New York*, supra, at 283-285; *Southworth v State of New York*, 62 AD2d 731, affd 47 NY2d 874; *Weiss v Fote*, supra, at 585, 587; *Ufnal v Cattaraugus County*, 93 AD2d 521, 524-525) or absolute immunity, where reasonableness or bad faith is irrelevant (see, *Tango v Tulevech*, supra, at 42), requires an analysis of the functions and duties of the particular governmental official or employee whose conduct is in issue (see, *Tarter v State of New York*, supra, at 518-519). The question depends not so much on the importance of the actor's position or its title as on the scope of the delegated discretion and whether the position entails making decisions of a judicial nature -- i.e., decisions requiring the application of governing rules to particular facts, an "exercise of reasoned judgment which could typically produce different acceptable results" (*Tango v Tulevech,* supra, at 41; see, *Tarter v State of New York*, supra, at 518-519). "

*Arteaga v. State*, 72 N.Y.2d 212, 215-218(1988) [emphasis added].

Absolute immunity extends only so far as necessary to protect the judicial process. *Burns v. Reed*, 500 U.S. 478, 485-87 (1991). Because absolute immunity is essential to safeguarding the integrity of the judicial process, it extends to those performing functions closely associated with that process. See *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). This includes not only officials performing discretionary acts of a judicial nature, see *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988), but also individual employees who assist such an official and who act under that official's direction in performing functions closely tied to the judicial process. See *Davis v. Grusemeyer*, 996 F.2d 617, 631-32 (3d Cir. 1993).

Plaintiff's action against Ulster County Supreme Court is barred by reason of the foregoing principles and precedents. He asks this Court to interfere in an on-going state court proceeding, and to award him punitive damages from that state court. This Court is without jurisdiction to entertain plaintiff's suit against Ulster County Supreme Court, and his claims against it should be dismissed.

## Point II

### Plaintiff Fails To State A Claim Under 42 U.S.C. 1983 Against Defendant Ulster County Supreme Court.

42 U.S.C. 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of

Columbia.

If the plaintiff is proceeding under section 1983 (and it is not at all clear that he is, but there must be some vehicle by which he seeks to bring his Fifth, Seventh and Fourteenth Amendment claims before this Court) he fails to state a claim under that statute against Ulster County Supreme Court. State courts are not proper defendants in section 1983 actions; courts are not "persons" under section 1983 and, if they were, an action would be barred by Eleventh Amendment. *Clark v. Clark*, 984 F.2d 272 (8th Cir. 1993), *rehearing denied, cert. denied* 510 U.S. 828. Thus the Appellate Division of Supreme Court of New York, as a part of the judicial arm of the State of New York, was not a "person" within purview of section 1983 subjecting persons to suit based on alleged deprivation of constitutional rights. *Zuckerman v. Appellate Division, Second Dept., Supreme Court of State of N. Y.*, 421 F.2d 625 (2d Cir. 1970). Equally, a State court is not "person" subject to suit under section 1983. *Brooks v. New York State Supreme Court, Appellate Div. First Dept.*, 2002 WL 31528632 (E.D.N.Y. 2002), *affirmed* 76 Fed.Appx. 356, 2003 WL 21961174. Section 1983 is of no assistance to the plaintiff in seeking to bring Ulster County Supreme Court before this Court for alleged violations of plaintiff's constitutional rights.

**Point IIII**
**This Court Should Abstain From Exercising Subject-Matter Jurisdiction Under *Younger v. Harris* 401 U.S. 37 (1971) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)**

**1. Younger Abstention.**

*Younger v. Harris,* 401 U.S. 37, 43-44 (1971) requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question state proceedings. The *Younger* doctrine is based upon "the notion that, in the ordinary course, 'a state proceeding provides an adequate forum for the vindication of federal constitutional rights.'"

' *Diamond "D" Constr. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) (quoting *Cullen v. Fliegner,* 18 F.3d 96, 103 (2d Cir.1994)). Accordingly, principles of federalism, comity, and mutual respect require federal courts to abstain from interfering in ongoing state court proceedings. *Schlagler v. Phillips,* 166 F.3d 439, 442 (2d Cir.1999).

*Younger* abstention is appropriate where "1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Philip Morris, Inc. v. Blumenthal,* 123 F.3d 103, 105 (2d Cir.1997) (internal quotation marks omitted); *see also Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 100-01 (2d Cir.2004) and *Spargo v. N.Y. State Comm'n on Judicial Conduct,* 351 F.3d 65, 75 (2d Cir.2003). The existence of ongoing state proceedings is an essential requirement for *Younger* abstention: "Absent any *pending* proceeding in state tribunals, ... application by the lower courts of *Younger* abstention [is] clearly erroneous." *Ankenbrandt v. Richards,* 504 U.S. 689, 705 (1992). Not only must state proceedings be pending in order to invoke *Younger,* the proceedings must have been initiated " 'before any proceedings of substance on the merits have taken place in the federal court.' " *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 238 (1984) (quoting *Hicks v. Miranda,* 422 U.S. 332, 349 (1975)).

The requirements of *Younger* abstention have been met in this case because (1) state proceedings are pending and were commenced prior to commencement of this federal court action (see attached exhibit A and Complaint, *passim*); (2) New York State has an important interest in administering its foreclosure and real property laws; and (3) plaintiff is able to raise his constitutional claims in those state court proceedings and in any appeal he may pursue subsequently. The state court proceeding is still pending in Ulster County Supreme Court. See exhibit A, Decision and Order of Hon. Richard M. Platkin, A.J.S.C., dated March 24, 2010. That

matter is still pending in Ulster County Supreme Court (*id*.), and was commenced before the commencement of this action on February 1, 2010. Obviously New York State has an important interest in settling title to real property located within its boundaries, and in enforcing its laws with regard to real property in the state. Finally the State of New York, through its trial and appellate courts, provides the plaintiff herein the opportunity to raise the same constitutional claims he seeks to raise in this action. Thus all of the requirements for the application of *Younger* abstention are satisfied and the action should be dismissed.

**2. Colorado River Abstention.**

Alternatively, and assuming that this Court finds that it does, in fact, have subject matter jurisdiction, it should not exercise that jurisdiction in the face of a pending state court matter involving the same *res*.

Abstention is an "extraordinary and narrow" exception to a federal court's duty to exercise its jurisdiction. *See In re Joint E. and S. Dist. Asbestos Litig.,* 78 F.3d 764, 775 (2d Cir.1996) (quoting *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 813 (1976)). The Supreme Court has recognized that courts should abstain from the exercise of jurisdiction "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River,* 424 U.S. at 813. The test for determining whether abstention is appropriate, first articulated in *Colorado River,* now requires examination of six factors: "(1) assumption of jurisdiction over a *res;* (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989). The test "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply

in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* Even as so weighted, this case presents one of those instances where a federal court should refrain from exercising its jurisdiction.

A foreclosure action is an *in rem* proceeding. *See Bowery Sav. Bank v. Meadowdale Co.,* 64 N.Y.S.2d 22, 23 (Sup.Ct.1942); *cf. Chapin v. Posner,* 299 N.Y. 31, 38, 85 N.E.2d 172 (1949) (referring to mortgage foreclosure action as "one in rem"). *See also* N.Y.C.P.L.R. 314, comment 314:3 (McKinney 1990) ("[a]n action to define title or other interest in property is *in rem* "); 55 Am.Jur.2d Mortgages § 630 (1996) ("[a]n action to foreclose a mortgage has been characterized as an action strictly *in rem* and *quasi in rem* ") (footnotes omitted). The Supreme Court has recognized that "in cases where a court has custody of property, that is, proceedings *in rem* or *quasi in rem* ... the state or federal court having custody of such property has *exclusive jurisdiction* to proceed." *Donovan v. City of Dallas,* 377 U.S. 408, 412 (1964) (emphasis added). *See also Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 466 (1939) ("[I]f the two suits are *in rem,* or *quasi in rem,* so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other."); *40235 Washington St. Corp. v. Lusardi,* 976 F.2d 587, 589 (9th Cir.1992) (per curiam) (in an *in rem* or *quasi in rem* action, "the first prong of the *Colorado River* abstention test is dispositive. In proceedings *in rem* or *quasi in rem,* the forum first assuming custody of the property at issue has exclusive jurisdiction to proceed.").

Thus the only other circumstance in which it would be appropriate to dismiss the federal court action based upon considerations of judicial administration would be where the court in the concurrent actions must exercise jurisdiction over the same property. *Colorado River,* 424 U.S.

at 818 (citing *Donovan v. City of Dallas,* 377 U.S. 408, 412 (1964)). In that instance, the "state or federal court having custody of such property has exclusive jurisdiction to proceed." *Donovan,* 377 U.S. at 412 (citing *Princess Lida v. Thompson,* 305 U.S. 456, 465-68 (1939)).

Thus, once a state court has taken jurisdiction of the *res* that is the subject of a state court *in rem* proceeding, a federal court cannot also exercise jurisdiction of the *res. Donovan,* 377 U.S. at 412; *Kline v. Burke Constr. Co.,* 260 U.S. 226, 229 (1922). The converse is also true. *Kline,* 260 U.S. at 229. However, this "first-filed" rule is applicable only to *in rem* proceedings and is not applicable to *in personam* actions. *Donovan,* 377 U.S. at 412; *Kline,* 260 U.S. at 230, 235. This is so because although a state and federal court may have concurrent jurisdiction, "both courts cannot possess or control the same thing at the same time." *Kline,* 260 U.S. at 235. Based upon this principle, the rule of comity developed prudentially limiting exercise of "in rem jurisdiction over a res that is already under the in rem jurisdiction of another court." *United States v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1145 (9th Cir.1989) (citing *Penn Gen. Casualty Co. v. Pennsylvania,* 294 U.S. 189, 195 (1935)). In other words, prior assumption of jurisdiction over a res by a state court creates an exceptional circumstance in which it may be proper for a federal court to decline to exercise its jurisdiction, as set forth in *Colorado River.* See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 19 (1983) (applying *Colorado River* to the facts of the case to find that no exceptional circumstances justified staying the federal action)

In this case, Ulster County Supreme Court first had jurisdiction over the *res* at issue: property known as 22 Ridge Mountain Road in Stone Ridge, New York . The State Court had taken jurisdiction over the *res* upon commencement of WF's foreclosure action which was filed in 2009. *See Princess Lida,* 305 U.S. at 466 ("[T]he principle ... that the court first assuming

jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well ... in suits ... where, to give effect to its jurisdiction, the court must control the property."). It is clear from the relief sought by the Complaint before this Court that this federal action is also in rem. See Complaint, pages 55-57, Request for Relief. Both courts cannot exercise control of the res which is the subject matter of both actions. Because WF filed its State court foreclosure action before plaintiff Ulloa commenced this federal action on February 1, 2010, the State Court thereby has exclusive jurisdiction to proceed and this Court should abstain from doing so if it has jurisdiction over this matter at all.

## CONCLUSION

Defendant's motion to dismiss this matter as to defendant Ulster County Supreme Court should be granted, or in the alternative, this Court should abstain from exercising its subject matter jurisdiction if such jurisdiction exists.

Dated: Albany, New York
March 31, 2010

                                            ANDREW M. CUOMO
                                            Attorney General of the State of New York
                                            Attorney for Defendant Supreme Court of the
                                                     State of New York In and For Ulster
                                                     County
                                            The Capitol
                                            Albany, New York  12224-0341

                                          By: *s/ Stephen M. Kerwin,* B/R # 103129
                                                    Stephen M. Kerwin
                                            Assistant Attorney General, of Counsel
                                            Bar Roll No. 103129
                                            Telephone:  (518) 473-7184
                                            Fax:  (518) 474-2221 (Not for service of papers)
                                            Email: Stephen.Kerwin@ag.ny.gov


TO:    Richard-Enrique: Ulloa
           General Post Office 771
           Stone Ridge, New York 12484

           Allison J. Schoenthal
           Renee Garcia
           Hogan & Hartson, LLP
           875 Third Avenue
           New York, New York 10022