1

2   I reserve the right to change, alter, and remove this document at any time.

3   Without the leave of this or any other court.
    Richard-Enrique; Ulloa, Sui Juris, unrepresented

4   Nation "New York".
    general post-office.

5   Hurley-town.
    United States Minor, Outlying Islands. Near. [12443-9998]

6

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

JAN 0 5 2011

LAWRENCE K. BAERMAN, CLERK
ALBANY

7

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

10

11          Richard-Enrique; Ulloa

12

13              Plaintiff(s)/Petitioner

14          Vs.

15

16

17          WELLS FARGO BANK, N.A.;
            SUPREME COURT FOR THE STATE

18          OF NEW YORK, In and for Ulster
            County; and JOHN OR JANE DOES

19           1-10 unknown investors

20          JOHN ROES 1-100, being undisclosed
            Mortgage aggregators (wholesalers),

21          Mortgage originators, loan seller, Trustee)
            Of Pooled Assets, Trustee for Holders of,)

22          Certificates of Collateralized Mortgage, )
            Obligations,

23

24          Defendant(s)

25

26

27

28

CASE INC 1:10-CV-345
(GLS/RFT)

NEW EVIDENCE

Complaint to Stay - Overturn
Set Aside
Foreclosure Order and Decision
of lower court

1

Comes the Petitioner, Richard-Enrique; Ulloa "real party in interest", (Plaintiff) a flesh and blood man without counsel, hereby presents to this court with a Motion to Compel.

Plaintiff alleges:

### General Background

1) Plaintiff(s) institutes this setoff, recoupment and action in response to Defendants' action to foreclose on Plaintiffs' Mortgage and dispossess Plaintiffs from their property. Plaintiff(s) requests statutory damages, actual damages, the costs of this action and attorney fees should need arise. Plaintiff complains against Defendant(s) for multiple violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA"), Regulation Z, 12 C.F.R. § 226.1 et seq., promulgated pursuant to TILA, 12 U.S.C § 2601 et seq, procedural due process violations, void contracts, and Predatory Lending practices pursuant to state law.

### Jurisdiction

2) Jurisdiction for the state claims arise under common law fraud and New York Statute of Frauds - General Obligations Law § 5-701, 5-703, and Pursuant to New York Rescission codes, New York Code - U.C.C. - ARTICLE 2 - SALES - § 2-106. Definitions: "Contract"; "Agreement"; "Contract for sale"; "Sale"; "Present sale"; "Conforming" to Contract; "Termination"; "Cancellation". .,

3) Jurisdiction for the federal claims arises under, 15 U.S.C. §1640(e), and 12 U.S.C §2614., and 5 USC Sec 556 D, and violation of substantive Fourth, Fifth and Ninth Amendment constitutional rights/protections, and void contracts.

4) This court has jurisdiction over the complaint because the property is situated in this district.

2

**Parties**

5) Richard E. Ulloa and Luis W. Rivera (Hereinafter "Plaintiff(s)"), are natural born people currently owning/living in a home residing in New York.

6) Defendant(s), Wells Fargo Bank, NA et al., (Hereinafter "Defendant" or Wells Fargo Bank.), is a National Bank with their principal place of business at: 2650 Wells Fargo Way,, Minneapolis, MN 55408, et al.; JOHN OR JANE Does 1-1000, unknown investors and agents.

**Factual Allegations**

7) At all times relevant hereto, Defendant(s) regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action was initially payable, making Defendant a creditor within the meaning of Truth in Lending Act (Herein after TILA), 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

8) On or about January 26, 2005 (settlement date), Plaintiff executed a promissory Note and a security agreement in favor of the lender Wells Fargo Bank, NA .... Said transaction extended consumer credit subject to a finance charge initially payable to the original lender with Defendant(s) as allege-assignee. The transaction is one for $208,750.00 and is designated by Defendants as original Loan No. 0139932685.

9) As part of this consumer credit transaction, Defendant(s) allege to retain a security interest in Plaintiff(s) property the location being at: 22 Ridge Mountain Road, Stone Ridge, New York and used as Plaintiff's principal dwelling.

10) The loan disclosure documents given contain fraud due to failure to consummate the agreements, lack of full disclosure, and having unclear concealed information and misrepresentations that hide relevant and material facts about the terms and

3

conditions of the loan transaction.

11) The disclosure violations and attempt at fraud by the Original Lender and current Defendant(s) create and give Plaintiff(s) the right to rescind and/or cancel this transaction.

12) The Plaintiff(s) rescinded/canceled the loan on November 23, 2009 and Noticed all parties of the same. A copy of the Plaintiff(s)' "Letter To Rescind" is attached and marked as "Exhibit F" and by this reference is incorporated herein.

13) As evidence of the allege-loan transaction, Plaintiff performed with **Wells Fargo Bank, NA** a written promissory Note transaction. A copy of the promissory Note is attached to this complaint as "Exhibit B" and incorporated by this reference.

14) The Mortgage was recorded in the Official Records of Ulster County, New York. A copy of the Mortgage is attached to this Complaint as "Exhibit A" and incorporated by reference here.

15) The Mortgage and Note are on record with their basis in erroneous amounts in violation of federal and state law, e.g., TILA and RESPA creating the current controversy about amounts owing on the loan and the need for an accounting. A copy of the "TILA Statement" is attached and marked as "Exhibit C" and by this reference is incorporated herein.

16) Despite Defendant(s)' knowledge of the previous violations and damages caused and the emotional distress it would cause against the Plaintiff(s) initiated a foreclosure and intends to sell Plaintiff's real property without just cause.

17) Defendants were without and continue to be without showing proper evidence on record that Defendant(s), has proper standing to sue and foreclose, but initiated a foreclosure process froth with defects and errors, yet still intend to sell Plaintiff's

4

1

2      home, evict Plaintiff(s) from his home creating the need to overturn/stay the said

3      foreclosure process and Order and Decision for Foreclosure Date: March 24, 2010

4      and imminent foreclosure auction sale.

5

6                                **Statement of Claims**

7

8      **18) Introduction:**

9

10

11     19) Pursuant to Rule and FRCP Rule 7(a)(1)(3), and Pursuant to Federal Rulings of

       Evidence, Rule 103, I make <u>offer of proof</u>, and present <u>constructive notice of</u>

12     <u>unconstitutional practices,</u> for the record of the following due process and other

13     errors and causes of action that do prejudice my case in violation of substantive

14     Fourth, Fifth and Ninth Amendment constitutional rights/protections I, Richard E.

15     Ulloa and Luis W. Rivera do make complaint and make offer of proof for the record

       of the wrongs being done to and against me, i.e., unconstitutional practices,

16     procedural and other plain errors and many and varied due process violations and

17     objectionable activities. There are real material facts in dispute here.

18

19                (a) Supervisory liability may be imposed under 1983 when an official has

20                    actual or constructive notice of unconstitutional practices and

21                    demonstrates "gross negligence" or "deliberate indifference" by

                      failing to act. MERIWETHER V. COUGHLIN, 879 F2d 1037 (2nd

22                    Cir. 1989).

23

24                (b) Law of trespass forbids intrusions onto land that Fourth Amendment

25                    would not proscribe. US V. HALL, 47 F3d 1091 (11th Cir 1995).

26

27                (c) Equal protection analysis is substantially identical under the Fifth and

                      Fourteenth Amendments. Fraternal Order of Police v. US, 152 F3d 998

28
       5

(D.C. Cir. 1998).

20) Due to all the wrongs done to me the Defendant(s) is indebted to me by way of recoupment and setoff.

### Void Contracts - Due Process Errors - Objections with Brief Memorandum of Law

21) The following due process errors are present, to wit:

### Statement Of Issues To Be Decided

22) Whether it is proper to let a judicial foreclosure process  proceed and stand with the imminent plan to dispossess and any subsequent Warrant to Evict stand or to stay/set aside the judicial process as void. A copy of the Defendant's Order and Decision for Foreclosure Date: March 24, 2010 is attached and marked as "Exhibit E" and by this reference is incorporated herein.

23) Whether failure to correct the Defendant(s)' errors and/or allow Plaintiff(s)/Petitioner(s) to correct mistakes and seek damages in recoupment and set-off would result in a manifest injustice in this matter.

24) In order to prevent undue prejudice, whether Plaintiff(s)/Petitioner(s) should be allowed to submit evidence to this Court and Defendant(s)' should be required to prove standing once challenged before this Court, before Plaintiff(s)/Petitioner(s) is dispossessed from his property.

6

1

2   25) Whether Plaintiff(s)/Petitioner(s) should be allowed to exhaust all administrative

3         remedies as well as judicial remedies before Plaintiff(s)/Petitioner(s) is dispossessed

4         from his property.

5

6                       **Memorandum of Points and Authorities**

7

8   26) Evidence is discovered which shows the Defendant(s)' lacked competent witnesses

9         and standing to empower them to foreclose and Plaintiff is due recoupment and set-

10        offs and the judicial process contract breaches and law violations, and Order and

Decision for Foreclosure Date: March 24, 2010 needs to be vacated and set aside.

11        Petitioner(s) requests relief from said contract breaches and law violations, action for

12        imminent foreclosure judgment sale pursuant to the First Amendment Right to

13        Petition and Fed. R. Civ. P. 7(a)(1), and 5 U.S C. 556D, and 60(b)(1)(2) for mistake,

14        inadvertence or excusable neglect and new evidence, or other applicable rules and

15        Maxims of Law.

16   27) Here Plaintiff(s) in a judicial foreclosure process  and sale by mistake failed to

17        demand validation of the debt, but as an unsophisticated consumer believed

18        Defendant(s) demonstrated the standing to assert a claim; but Plaintiff(s) knows

19        otherwise now and seeks remedy if the Court believes additional evidence is

20        appropriate, per 60(b)(2) and/or Fed. R. Civ. P. 7(a)(1), and 5 U.S C. 556D, Petitioner

21        requests leave to submit such evidence. **The United States Supreme Court**

22        **specifically discussed Fed. R. Civ. P. 60(b) in *Pioneer Inv. Servs. Co. v. Brunswick***

23        ***Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993), and found that the provision does**

**not require the party seeking relief to show that he or she is faultless.** Again,

24        applying the same "excusable neglect" standard, the Supreme Court allowed relief

25        when a party's attorney had failed to file a proof of claim by the set deadline. *Id.* at

26        383. The Supreme Court recognized that "excusable neglect" by definition

encompasses situations where judgment could have been avoided. *Id.* at 394.

27              a)  The Maxim of Law is,

28

       7

      b) **He who mistakes is not considered as consenting.**

      c) **Whoever** pays **by mistake** what he does not owe**, may recover it back;** but he who pays, knowing he owes nothing; is presumed to give.

28) Thus, to the extent that Defendant(s) should have provided additional or any evidence of the following: proper standing to sue and foreclose, competent custodial witnesses, original promissory Note and mortgage documentation, with custodial testimony of books and records, Defendant(s)' lack proof that the foreclosing party/Beneficiary has evidence of being a secured party, real party in interest, having received proper transfer and taken proper custodial care in this matter.

29) To the extent it might be required, Plaintiff(s) have obtained/assert additional or new evidence concerning and in/during the judicial foreclosure process demonstrating Defendant(s)' lack of standing to sue and foreclose, and to the extent such additional evidence is necessary to cure any mistake, inadvertence or excusable neglect, Plaintiff request that the Court take this evidence into consideration in granting relief from the non judicial foreclosure process and default and relief from the Order and Decision for Foreclosure Dated March 24, 2010  and any subsequent plans to sell property and warrant of eviction, or the like.

30) Second, Defendant(s) has a good faith duty to speak and bring forth all relevant and material evidence, and Defendant(s) breached that duty resulting in a judicial foreclosure process Order and Decision for Foreclosure Date: March 24, 2010 to vacate and set aside for fraud.

      a. Fraud and deceit may arise from silence where there is a duty to speak the truth, as well as from speaking an untruth. Morrison v. Coddington, 662 P. 2d. 155, 135 Ariz. 480(1983).

8

b. "Suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation." Leigh v. Loyd, 224 P.2d 356, 74 Ariz. 84 (1952).

31) The 5th Circuit Court established what the Defendant must prove in order to meet this good faith duty when it held:

(a) To recover on a promissory Note, the plaintiff (herein is Defendant) must prove: (1) the existence of the Note in question; (2) that the party sued signed the Note; (3) that the plaintiff is the owner or holder of the Note; and (4) that a certain balance is due and owing on the Note.  See In Re: SMS Financial LLC. v. Abco Homes, Inc. No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.)

32) To meet this burden of proof the original documents needs to be presented to the Plaintiff(s) and the Court, for no other documents are substantial proof pursuant to 5 U.S.C. 556D.  To start, the relevant documents are: the original Note and mortgage – Front and Back, the Note and mortgage assignments Front and Back with alonges, the chain of title, the books - ledger - records, and custodian first-hand testimony in support of the relevant instruments and documents.

33) Here Defendant(s) is lacking, suppressing and/or concealing the original documents books, records, ledger, assignments and chain of title, yet conveying a false impression in presenting copies or no material docs at all, like Note, assignments and chain of title, or custodial affidavit(s). Conveying a false impression their hearsay, speculative evidence/copies or claims are competent to fulfill its purpose of supporting subject matter jurisdiction to exercise a foreclosure action, and Foreclosure Sheriff's Sale, therein, conveying this false impression makes Defendant(s)' claims equivalent to false statements.

9

(a) "When one conveys a false impression by disclosure of some facts and the concealment of others, such concealment is in effect a false representation that what is disclosed is the whole truth."  State v. Coddington, 662 P.2d 155, 135 Ariz. 480 (Ariz. App. 1983). Suppression of evidence material to guilt or punishment violates defendant's (or herein Plaintiff's) fundamental due process rights. DOWTHITT V. JOHNSON, 230 F3d 733 (5th Cir. 2000).

34) The Maxims of Law are:

(a) "Suppression of the truth is equivalent to the expression of what is false;

(b) The law punishes falsehood;

(c) Concealment of the truth is (equivalent to) a statement of what is false;

(d) False in one (particular), false in all;

(e) Deliberate falsehood in one matter will be imputed to related matters;

(f) A concealed fault is equal to a deceit;.

(g) Out of fraud no action arises."

(h) Suppression of fact, which should be disclosed, is the same in effect as willful misrepresentation

(i) A neglected duty often works as much against the interests as a duty wrongfully performed.

35) Therefore, the Foreclosure Sheriff's Sale needs to be vacated and set aside for fraud by concealment, misrepresentation and suppression of facts which should be disclosed.

**36) In the original non judicial foreclosure action the herein Plaintiff(s) was allege-**

10

**borrower and the herein Defendant(s) allege-beneficiary, further,**

## Causes with Brief Memorandum of Law

As a result of the Plaintiff's own thorough investigations of these matters and data obtained through research Plaintiff has secured through experts in the field for these matters, Plaintiff has found the following violations and material issues to be the case regarding these issues.

## First Cause of Action
## Defendants' Claim in Recoupment
## Violations of the Federal Truth In Lending Act (TILA) and Home Ownership and Equity Protection Act (HOEPA)

37) Plaintiff(s) hereby re-alleges, repeats and incorporates by this reference all allegations and paragraphs above and makes them a part of this claim, and states:

38) Under 15 U.S.C. § 1640(e) and New York Law, Plaintiff (s) asserts these claims and defenses in recoupment, and hereby counter claims pursuant to 1640(e) as a response to Defendant's action to foreclose on Plaintiff's mortgage/deed of trust loan.

39) In this instant action the Defendant(s) fail to provide Plaintiff(s) certain disclosures where federal law per the Truth in Lending Act, hereinafter "TILA." The disclosure TILA requires are as follows:

a. Defendant(s) fail to disclose in the proper manner the finance charge as 12 CFR §226.4 requires.

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    b.  Defendant(s) fail to disclose in the proper manner the general disclosures clearly and conspicuously in writing, in a form the Plaintiff could keep 12 CFR §226.17(a)(1) requires.

    c.  Defendant(s) fail to disclose in the proper manner the preliminary disclosures as 12 CFR §226.19(a), (a)(2), (b), (b)(1) and (b)(2)(B) requires.

    d.  Defendant(s) fail to disclose in the proper manner the Itemization of Amount Financed as 12 CFR §226.18(c) requires.

    e.  Defendant(s) fail to disclose in the proper manner the required disclosures under 15 USC §1638(a)(2)(B).

    f.  Defendant(s) fail to disclose in the proper manner the Finance Charge as 12 CFR §226.18(d) requires.

40) Further, per research and review of the loan transaction the finding are: the annual percentage rate was understated by 1.367% a TILA violation; the finance charge was understated by $16,334.61 a TILA violation; per HOEPA Section 32 this is a High-cost loan in violation of HOEPA with fees paid out at a rate of 9.235%, with a trigger threshold of $16,700.00, but calculated at $20,591.87; and the Rescission Period was not given since there are no Notices of Right to Cancel disclosed to borrower in violation of TILA

41) Therefore, and in addition, there appears to be a failure to give the homeowner the proper pre-disclosures which is a material serious violation of TILA. The pre-disclosure missing and/or ineffective are:

12

a) TILA Statement

b) HUD-1 Settlement Statement

c) Good Faith Estimate/Itemization of Amount Financed

d) Notice of Right To Cancel

e) "The Court of Appeals maintains that TILA does not permit a creditor to delegate disclosure responsibilities to another and that the disclosures needed to have been made by Sky Bank. The Act (and the regulation that implements it) is clear in that it states at 12 C.F.R. § 226.17 that "[t]he creditor shall make the disclosures...clearly and conspicuously in writing, in a form that the consumer may keep." And at 12 C.F.R. § 226.18 it states "[f]or each transaction, the creditor shall disclose the following information..." Duties required by "the creditor" are referred to several times in the Act. It was determined that the creditor, and the creditor alone, has the disclosure responsibility."

f) Vallies v. Sky Bank:
http://www.bankersonline.com/infovault/courtwatch.html

g) 12 C.F.R. Section 226.17(b) Time of disclosures.

h) 3. Disclosures provided on credit contracts. Creditors must give the required disclosures to the consumer in writing, in a form that the consumer may keep, before consummation of the transaction.

42) Failure to Meet Proper Consumer Standard for Consummation:

43) The Lender is without properly signing the loan and thereby consummating the contract with borrower. The standard by which the Lenders are required to execute contracts for mortgage loans is unsophisticated consumer standard in plain English language. As such the borrower expects that the lender would make their agreement in writing, by contract with the borrower in like manner as the borrower makes the

13

agreement. This is not the case. The contract is a one sided agreement not signed by agent of the Lender and there is no disclosure to the unsophisticated consumer that this is the case.

44) An examination of a copy of the Mortgage in County Records yields the fact that there is no agreement on the part of the Lender to provide due consideration for the contract since there is no signature for an agent signing on behalf of the Lender in the Mortgage document. The Mortgage contract is unenforceable and illusory in the sense of it being hopelessly or deceptively one-sided since it never contained agreement by both parties to provide due consideration, the Creditor's part and agreement missing.

   a. No contract exists unless the parties agree on all of the material terms and conditions of the contract and nothing is left to some future agreement. BROWNING V. PEYTON, 918 F2d 1516 (11th Cir. 1990)

   b. Contracts are illusory in sense of hopelessly or deceptively one-sided, if they are fraudulent, unconscionable, or the result of undue influence (Undue Influence - improper influence that deprives a person of freedom of choice or substitutes another's choice or desire for the person's own compare coercion, duress, necessity ). TRUCK INS EXCHANGE V ASHLAND OIL, INC., 951 F2d 787 (7th Cir. 1992)

   c. Truth in Lending Act was passed to prevent unsophisticated consumer from being misled as to total cost of financing. Truth in Lending Act, Section 102, 15 U.S.C. Section 1601. Griggs v. Provident Consumer Discount. 680 F.2d 927, certiorari granted, vacated 103 S.Ct. 400, 459 U.S. 56, 74 L.Ed.2d 225, on remand 699 F.2d 642.

   d. Whenever possible courts should Look in plain language of contract to resolve any question of fact or interpretation. ALEMAN FOOD SERVICES INC. V.

14

US, 994F2d 819 (Fed. Cir 19930) HILLS MATERIAL CO. V. RICE, 982 F2d 514 (Fed. Cir. 1992)

45) The lender uses the word "Loan" but does not carry out a loan according to the plain English language understanding of the word to the unsophisticated consumer allege-borrower/Plaintiff. Banks/lenders use the homeowner's credit/promissory Note to perform an exchange that results in credit to the homeowner's/borrower account to fund the allege-borrower's loan. In that/this case the homeowner is provided with a form of exchange service by the bank/lender but not a "loan" in the common understanding of the word. This is not clearly explained to the allege-borrower and the Plaintiff herein is thereby deceived concerning the true nature of the transaction.

46) Concealed Disclosure Related to Funds Unaccounted For:

47) Fees Paid - Missing "To" Whom Paid and Other HUD 1 Related Issues:

48) On the HUD 1 the property location and address has an incorrect City; the HUD 1 discloses Ulster as the City but the location of the property is Stone Ridge New York, not Ulster.

49) On the HUD 1 the Place of Settlement for the transaction is disclosed as Rochester New York; but the Place of Settlement is actually Atlanta Georgia not Rochester New York as the notary acknowledgement on the mortgage proves

50) On the HUD 1 Lines 1304 – 1307 "Bank of America" "Discover" and "Ulster Credit Union" are not fees and "Credit Card" is not a company that these fees are paid to, so "To" whom these fees are paid and what these fees are paid out for is not clearly disclosed and, therefore, these fees are part of the finance charge. This among other false portions of information contained in the disclosures demonstrates intent to conceal the true nature or the charge on the part of the lender and causes the

15

transaction processes and procedures to be untrustworthy.

51) On the HUD 1 since "Credit Card" is not specific as to whom the recipient of the charge is the phase "Credit Card" is a general expression leaving the charge open to being paid to anyone. These "general expressions" on the HUD 1 using the phrase "Credit Card" in the place where a company name belongs are demonstrating games and shenanigans not befitting disclosures for an enforceable contract. These disclosures in lines 1304 through 1307 are gobletygope that look like they have something to do with paying off credit card debt by giving the impression of being a disclosure for the payoff of something does not meet the TILA requirements for being clear and conspicuous disclosure and the charge becomes a APR related finance charge per 12 C. F. R. 226.4(a)(1), (a)(1)(i), (a)(1)(ii) and (c)(7).

52) Non-Bona Fide Charges:

53) These charges on the HUD 1, lines 1304 -1307, are finance charges due to failing to meet the 12 C.F.R. 226.4(c)(7) - Truth in Lending Act (TILA ) requirements for being bona fide in order to be non-finance charges and not a part of the APR calculations. For charges to not be a part of the finance charge they must be bona fide without the appearance of fraud or misrepresentation or concealment or lack of full disclosure. These charges are in an environment among other disclosed charges that confirm to the HUD 1 formality of first presenting the "Name of Charge" then "To" whom the charge is paid, the normal pattern of disclosure for these types of charges, but these charges break that pattern and form. Breaking with this formality coupled with using a general expression like "Credit Card" in the place of a company name nullifies the legitimacy of the disclosure and the disclosure becomes false or incorrect, erroneous, and non-bona fide; and the charge, therefore, is part of the finance charge calculations.

54) Also these HUD 1 erroneous disclosures are in an environment where a HUD 1 has false information pertaining to the place of settlement, and the location of the subject property and a foreged signature which makes the document contain elements of a

16

1

2   attached and Marked as "Exhibit G" and incorporated herein by this reference.

3
4      a)  All Truth in Lending Act (TILA) disclosures must be accurate, and
5          lenders are generally strictly liable under TILA for inaccuracies, even
6          absent showing that the inaccuracies are misleading. Smith v. Cash
           Store Management, INC., 195 F3d 325 (7th Cir. 1999)

7
8      a)  The Maxim of Law is:
9      b)  Many things can be implied from a few expressions; and
       c)  Fraud lies hid in general expressions.
10     d)  A general expression implies nothing certain.
11
12
13  59) These actions and statements are equivalent to what is false because as the Maxims
14     of Law say,
15     a)  Suppression of the truth is equivalent to the expression of what is
           false;
16     b)  Concealment of the truth is (equivalent to) a statement of what is
17         false;
18     c)  A deceiver deals in generals;
19     d)  Fraud lies hid in general expressions;
20     e)  A concealed fault is equal to a deceit;
21
22  60) The Defendants are liable for these falsehoods because as the Maxims of Law say,
       a)  The law punishes falsehood;
23     b)  False in one (particular), false in all;
24     c)  Deliberate falsehood in one matter will be imputed to related matters;
25     d)  Out of fraud no action arises.
26
27
    61) As a result of the above defects, errors, and violations the Defendant(s) is indebted to
28
       18

the Plaintiff(s) by way of damages in recoupment and set-off pursuant to TILA 15 U.S.C. 1640 (e) and 12 C.F.R. § 226.17.

### Second Cause of Action
### Defective - Void Mortgage and Void Promissory Note Contracts

62) Plaintiff(s) hereby re-alleges, repeats and incorporates by this reference all allegations and paragraphs above and makes them a part of this claim, and states:

63) Further, per New York Statute of Frauds - General Obligations Law § 5-701, 5-703, the mortgages and promissory Notes are void since there is no signature on the part of agent for the lender in agreement with these contracts. The lender has not signed to provide due consideration in the contract and thereby make it binding and enforceable.   Since the lender has not signed to take any risk, provide any consideration or undertake any obligations in the contract the lender has not lawfully gained any rights to enforce any provisions of the contract to appoint as "Assignee" and to foreclose, etc.... Further, the lender has not gained lawful title to be able to fulfill the contract to pass on good and clear title to the homeowner, so the lender is first to breach the contract in many ways.

64) By law i. e., New York Statute of Frauds - General Obligations Law § 5-701, 5-703, the contract for sale of land is void if not in written form. **An essential element in all contracts is the agreement of the parties and since by law the contract must be in writing the essential element of the agreement of the lender must be in writing,** but no such signature on the part of the lender exists on the contracts. The Mortgage and Note contracts do not bare the signature of the lender, or lender authorized agent, in agreement to the obligations of the contracts. The contracts are void for lack of consent on the part of the lender to provide consideration and undertake any obligations with regard to the contracts.

19

**New York Statute of Frauds - General Obligations Law § 5-701, 5-703**,

5-703. **Conveyances and contracts concerning real property required to be in writing.** 1. An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing. But this subdivision does not affect the power of a testator in the disposition of his real property by will; nor prevent any trust from arising or being extinguished by implication or operation of law, nor any declaration of trust from being proved by a writing subscribed by the person declaring the same.

65) Merely having the Lender name in the contracts in writing does not show consent on the part of the Lender.

    a)  The Maxims of Law is,

    b)  The expression of those things which are tacitly implied operates nothing.

66) Without the Lenders expressed consent as required by law in written form, as land sale contracts with all elements thereof must be in written form, there is no mutual agreement demonstrated, but only general expressions of implied contract are possible as in a unilateral contract/instrument and a unilateral type of instrument is not the intention of an unsophisticated consumer, which is the consumer standard that applies in residential home mortgage transactions.

20

    a. The Maxims of Law are,

    **b. The essence of a contract being assent, there is no contract where assent is wanting.**

    c. Consent makes the law. A contract is a law between the parties, which can acquire force only by consent.

    d. Consent makes the law: the terms of a contract, lawful in its purpose, constitute the law as between the parties.

    e. A general expression is to be construed generally.

    f. A general expression implies nothing certain.

    g. General words are understood in a general sense.

    **h. A deceiver deals in generals.**

    **i. Fraud lies hid in general expressions.**

67) Fraud now exits and false representation in that the Defendant(s) is exercising provisions of the contract without gaining at some point lawful access to exercising rights to provisions of the contract(s).

68) The lender, and/or by agent, is without signing and committing to any good-faith performance in the contract(s) and is therefore not a party to the contract since parties commit to good-faith performance in a contract.

69) The lender is without agreeing to any obligations under the contract(s); there can be no binding enforceable contract without the presence and existence of obligations on the part of both/all parties that bind the contract.

70) The lender cannot retain benefits under a contract and escape obligations of the contract

71) If this transaction was not intended by the lender as a contract, but simply as the borrower executing an instrument in favor of the lender or the like, this was not

21

disclosed to me the Plaintiff(s) in **plain English language** to my understanding, and is therefore not my understanding. My understanding and intent for the transaction is and was for it to be a normal contract where there is mutual expressed agreement in writing. The lender to my knowledge did not agree in writing to the obligations of the contract that the lender is charged with by a signature, or authorized agent signing on behalf of lender. That being the case and with the other lack of full disclosure in this transaction therefore this transaction is not a bona fide sale and the foreclosure action cannot be brought per, New York Statute of Frauds - General Obligations Law § 5-701, 5-703.

72) As an "unsophisticated consumer" in the said transaction, and that is the "standard" that applies according to TILA, the lender fits into my understanding that in a contract both/all parties must sign in agreement.

73) **Cites:**

    a.  Obligation of contract is law which binds parties to perform their agreement. Norfolk and Western RY. CO. v. American Train Dispatchers Ass'n., 499 US 117, 113 Led2d 95, 111 Sct 1156 (1991)

    b.  Party cannot be permitted to retain benefits received under contract and at the same time escape obligations imposed by contract. Grillet v. Sears, Roebuck & Co., 927 F2d 217 (5th Cir. 1991)

    c.  Every party to contract commits himself to good-faith performance. Mills v. Polar Molecular Corp., 12 F3d 1170 (2nd Cir. 1993)

    d.  Under New Hampshire Law, contracts signed under economic duress are voidable. ABBADESSA V. MOORE BUSINESS FORMS, INC., 987 F2d 18 (1st Cir. 1993)

    e.  No contract exists unless the parties agree on all of the material terms and

22

1

2    conditions of the contract and nothing is left to some future agreement.

3    PELLETIER V. ZWEIFEL, 921 F2d 1465 (11th Cir. 1991) BROWNING V.

     PEYTON, 918 F2d 1516 (11th Cir. 1990)
4

5
     f.   To have enforceable contract, parties must exchange consideration.  b)
6
          Ambiguity in contract will generally be considered against party who drafted
7         contract. KAFKA V. BELLEVUE, 999 F2d 1117 (7th Cir. 1993)

8

9    g.   This claim of void contracts is based upon my rights with respect to

          constructive fraud and misrepresentation as established in, but not limited to,
10
          the cases of Tyler v. Secretary of State, 184 F.2d 101 (1962) and also El Paso
11        Natural Gas Co. v. Kysar Insurance Co., 605 Pacific 2d 240 (1979), which

12        stated: "Constructive fraud as well as actual fraud may be the basis of

13        cancellation of an instrument."

14

15
     h.   Contracts can be avoided if they are induced by, fraud, duress, and
16
          misrepresentation. GOLDMAN V. BEQUAL, 19 F3d 666 (D.C. Cir. 1994) IN
17        RE ALLIED SUPERMARKETS, INC., 951 F2d 718 (6th Cir. 1991)

18        RESOLUTION TRUST CORP. V. RUGGIERRO, 977 F2d 309 (7th Cir.

19        1992)

20
     i.   Under Federal and Georgia law, contract is ambiguous if it is reasonably
21
          susceptible to more than one interpretation. Stewart v. KHD Deutz of
22        America, Corp. 980 F2d 698 (11th Cir. 1993)

23

24   j.   To have enforceable contract, parties must exchange consideration.

25        Ambiguity In Contract will generally be considered against party who drafted

          contract. Kafka v. Bellevue, 999 F2d 1117 (7th Cir. 1993)
26

27
     k.   Contract interpretation begins with plain language of agreement.  Foley
28
     23

County v. US, 11 F3d 1032 (Fed. Cir. 1993)

l.  When single portion of lengthy contract is unintelligible, but yet severable from remainder, court may strike portion itself without affecting enforceability of remainder, if not, judge should direct verdict against party demanding enforcement of clause. US v. Data Translation Inc., 984 F2d 1256 (1st Cir. 1992)

m.  Truth in Lending Act was passed to prevent unsophisticated consumer from being misled as to total cost of financing. Truth in Lending Act, Section 102, 15 U.S.C. Section 1601. Griggs v. Provident Consumer Discount. 680 F.2d 927, certiorari granted, vacated 103 S.Ct. 400, 459 U.S. 56, 74 L.Ed.2d 225, on remand 699 F.2d 642.

n.  Purpose of Truth in Lending Act is for customers to be able to make informed decisions. Truth in Lending Act Section 102, 15 U.S.C.A. Section 1601. Griggs y, Provident Consumer Discount Co.. 680 F.2d 927, certiarari granted, vacated 103 S.Ct. 400, 459 U.S. 56, 74 L.Ed,2d 225, on remand 699 F,2d 642,

o.  Truth in Lending Act is strictly liability statute liberally construed in favor of consumers. Truth in Lending Act Section 102 et seq., 15 U.S.C.A. Section 1601 et seq. Brophv v. Chase Manhattan Morgt Co, 947 F.Supp. 879.

p.  Truth in Lending Act should be construed liberally to ensure achievement of goal of aiding unsophisticated consumers so that consumers are not easily misled as to total costs of financing. Truth in Lending Act, Sections 102 et seq, 102(a), 105 as amended, IS U.S.C.A. Sections 1601 et seq., 1601(a), 1604; Truth in Lending Regulations, Regulation Z, Sections 226.1 et seq., 226.18, 15 U.S.C.A. foil. Section 1700, Basile v. H&R Block. Jlt(L. 897 F.Supp. 194.

24

74) **Further Mortgage and Promissory Note Defects:**

75) The mortgage and promissory Note documents have defects. The defects prevent the party foreclosing from claiming security interest in the property in foreclosure. These defects are material to the establishment of the status of the Defendant(s) as parties with rights to enforce the provisions of the Mortgage and Note contracts as beneficiary or agent of beneficiary.

76) The Defendant is causing irreparable injury and harm to the Plaintiff(s) in initiating and proceeding with a foreclosure process without merit with basis in defective instruments that fail to demonstrate and establish the Plaintiff is operating under the authority of a person or being a person with security interest.

77) **Lack of Borrower Signature:**

78) As a result of the above fraud, undue influence, and lack of full disclosure there is no true and correct signature of Plaintiff(s) Richard E. Ulloa and Luis W. Rivera on any contract for the subject mortgage(s) and loan(s). A signature mark is with the intention to attest to the validity and authenticity of a writing which can only be done if one has full disclosure and understanding of the terms and conditions of the contract, which is not the case here.

79) The note fails to disclose the actual rate of interest percentage rate that the borrower is paying it only discloses the interest rate and not the actual percentage of interest rate per TILA Statement upon which the monthly payment is based.

80) Further, Defendants' failure to bring forth and give full disclosure of the relevant terms and conditions of the Mortgage and Note - i.e., explaining the true banking/bankers meaning behind the word "Loan" and using words like for the Mortgage and Note and not fully labeling charges on the HUD-1, Line 1304 – 1307 , and 1001 costs as "To" whom fee(s) are paid is missing, thereby leaving the

25

homeowner with a lack of clear understanding of the transaction in violation of Truth in Lending Act, hereafter TILA, and other federal and state laws and general contracting principles of the need for full disclosure to have a valid contract – and thereby leaves the Mortgage and Note contracts and agreements in the Office of the Ulster County Recorder's Office , State of New York without a authentic signature on the part of the Plaintiff(s) which results in a lack of the element of standing on the part of the Defendants to foreclose. The HUD-1 Statement evidencing the transactions is attached hereto, marked "Exhibit D" and by this reference is incorporated herein.

81)

        a.   The Maxims of Law are,

        b.   One is not present unless he understands;

        c.   Deliberate falsehood in one matter will be imputed to related matters.

**82) Non-Authenticated Contracts/Instruments:**

83) The Mortgage and Promissory Note are without being authenticated and admissible as evidence since they do not bare the signature of the lender or authentic signature of Plaintiff(s) borrower(s).

84) Also, the Mortgage and Note are not signed by the Original Lender/Defendant-assignee to make the instruments binding and enforceable.

85) Further, the Mortgage and Note contain erroneous figures/amounts and undisclosed recipients of fees for which there needs to be an accounting to determine the true details and nature of the Mortgage Loan transaction.

86) Nor is there any there is original best evidence introduced into court on proving Defendant is holder of the original Note and a proper assignment with a proper chain

26

of title showing Defendant has standing to foreclose.

87) Due to the above violations the Defendants are indebted to Plaintiff by way of recoupment and setoff for attempting to enforce defective and void contracts.

## Third Cause of Action
## Void Judicial Foreclosure
## Defects in the Foreclosure Process

88) Plaintiff(s) hereby re-alleges, repeats and incorporates by this reference all allegations and paragraphs above and makes them a part of this claim, and states:

89) The integrity of the foreclosure process is violated in this matter due to numerous defects and errors on the following grounds:

90) **Foreclosure Process Void Order for Fraud on Court:** The Order and Decision for Foreclosure Date: March 24, 2010 discloses the property location to be in Ulster New York but this is incorrect so there is in fact not Order against the property due to the forged HUD 1 and the property location being incorrect on it. This forged HUD 1 caused a fraud on the court which resulted in an erroneous Order.

91) Further, pursuant to 5 USC Sec 556 D:

    a) "Except as otherwise provided by statute, ~ **the proponent of a rule or order has the burden of proof."  Any code, rule or regulation or statute a party is imposing must be done upon "...reliable, probative, and substantial evidence...,"** see 5 USC Sec 556 D.  Any statute that makes an exception to this requirement of evidence is unconstitutional in nature and null an void unless the unconstitutionality is without issue, and one upon which the rule is imposing waives rights to substantial evidence. This is not the case here.  The one upon which the rule is imposing is hereby asserting and retaining all

27

Creator-God given rights, "Without Prejudice" and without exception.

### 92) Lack of Substantial Evidence - Original Mortgage and Note:

93) Here I object substantial proof i..e., original documents and custodian(s) not being produced to verify the standing of the Defendant(s) as holder in due course of the Mortgage and Note. I object to copies being used of the mortgage and Note and assignments to establish standing upon which the Defendant can sue and foreclose. I have requested the original documents be produced.

94) Here the original mortgage and Note have not been produced as evidence for examination by and with the corroborating testimony of the custodian(s) of the records, books, and ledger.

95) Here "Without Exception," I have never with knowledge and intent, nor do I now waive my rights to have substantial and best evidence used i. e., the original instruments to establish that status of the Defendant(s) as holder in due course with standing to sue.

96) Without exception I deny waiving my rights to have substantial proof of right of claim before any party can exercise the mortgage contract foreclosure clause.

   a) The Maxim of Law is:
   b) The presumption is always in favor of the one who denies.

97) Plaintiff(s) objects to copies being used instead of the original Mortgage and Promissory Note. The Defendant(s) is without proving Defendant(s) is the real party in interest and holder in due course the original Mortgage and Note in that the Defendant(s) has not produced substantial proof i. e., the original mortgage and Note and all the assignments leading to the mortgage and Note coming into the possession of the foreclosing Defendant as required by law.

28

98) Plaintiff(s)' hereby rebuts and denies any presumption that Plaintiff(s) has in the past or do now waive their rights to production of original documents and compliance with 5 USC Sec 556 D, "**... the proponent of a rule or order has the burden of proof." Any code, rule or regulation or statute a party is imposing must be done upon "...reliable, probative, and substantial evidence...,"**

        c) Again The Maxim of Law is:

        d) The presumption is always in favor of the one who denies.

99) **Cites:**

    a. Where the complaining party cannot prove the existence of the Note, then there is no Note. To recover on a promissory Note, the plaintiff (herein is Defendant) must prove: (1) the existence of the Note in question; (2) that the party sued signed the Note; (3) that the plaintiff is the owner or holder of the Note; and (4) that a certain balance is due and owing on the Note.  See In Re: SMS Financial LLC. v. Abco Homes, Inc. No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.)

    b. Applicable New York law and Federal Civil rule 17(a) requires "an action must be prosecuted in the name of the real party in interest." The lender Plaintiff/Assignee, "bears the burden of demonstrating standing and must plead its components with specificity."

100)   Pursuant to Federal Civil Rule 34(a)(1)(A) Plaintiff must produce of inspection the original Note and Mortgage signed in ink.

    a. "...the burden of proving jurisdiction rests upon the party asserting it." Bindell v City of Harvey, 212 Ill.App.3d 1042, 571 N.E.2d 1017 (1st Dist. 1991)

29

**Rule 34. Producing Documents, Electronically Stored Information, and Tangible Things, or Entering onto Land, for Inspection and Other Purposes**

**(a) In General.**

A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information — including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations — stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

**101)   Defective Promissory Note and Mortgage Document :**

102)   The Mortgage document is missing a signature in acceptance by the Lender, or authorized lender agent in agreement and acceptance of the contract.

103)   Therefore an essential element of the contracts is not in writing, "the element of acceptance/agreement," in violation of "New York Statute of Frauds - General Obligations Law § 5-701, 5-703," and the contracts are void.

30

1

2  104)  Therefore, the contract on which the judicial foreclosure process is based is

3       deficient and defective, without capacity to give jurisdiction to the foreclosing party.

4

5  **105)  Cites:**

6       a.  Contracts can be avoided if they are induced by, fraud, duress, and

7           misrepresentation. GOLDMAN V. BEQUAL, 19 F3d 666 (D.C. Cir. 1994) IN

8           RE ALLIED SUPERMARKETS, INC., 951 F2d 718 (6th Cir. 1991)

9           RESOLUTION TRUST CORP. V. RUGGIERRO, 977 F2d 309 (7th Cir.

10          1992)

11

12      b.  No contract exists unless the parties agree on all of the material terms and

13          conditions of the contract and nothing is left to some future agreement.

14          PELLETIER V. ZWEIFEL, 921 F2d 1465 (11th Cir. 1991) BROWNING V.

          PEYTON, 918 F2d 1516 (11th Cir. 1990)

15

16      c.  Obligation of contract is law which binds parties to perform their agreement.

17          Norfolk and Western RY. CO. v. American Train Dispatchers Ass'n., 499 US

          117, 113 Led2d 95, 111 Sct 1156 (1991)

18

19      d.  Party cannot be permitted to retain benefits received under contract and at the

20          same time escape obligations imposed by contract. Grillet v. Sears, Roebuck

21          & Co., 927 F2d 217 (5th Cir. 1991)

22      e.  Every party to contract commits himself to good-faith performance. Mills v.

23          Polar Molecular Corp., 12 F3d 1170 (2nd Cir. 1993)

24

25      f.  Sheriffs sale of mortgaged property based void judgment, such as judgment

26          entered in violation of constitutional principles and state law, must be set

27          aside. IN RE FRICKER, 113 BR 856 (Bkrtcy. E.D. Penn. 1990)

28

31

106)   In light of the above facts mentioned in the causes of action above, the Defendant(s) have caused Plaintiff(s) severe harm by way of defective foreclosure process and seeking the enforcement of a void contract and Defendant(s) are thereby indebted to Plaintiff(s) by way of recoupment and setoff.

**Fourth Cause of Action**

**Injunctive Relief**

107)   Plaintiff(s) hereby re-alleges, repeats and incorporates by this reference all allegations and paragraphs above and makes them a part of this claim, and states:

108)   Defendants intend to sell, and unless restrained, will sell the property and evict the Plaintiff(s) and cause great and irreparable injury to the Plaintiff(s) in that if the contract breaches and law violations, action for imminent foreclosure judgment sale takes place the Plaintiff(s) is without the ability to redeem the property that they have lawful claim and rights to.

109)   The contract breaches and law violations, action for imminent foreclosure judgment sale is wrongful and needs to be enjoined, because the Plaintiff(s) lacks any other plain, speedy, or adequate remedy, and the injunctive relief requested for in this Complaint is appropriate and necessary at this time to stop and prevent irreparable harm and injury and the Plaintiff(s) from losing their property.

110)   Due to the all the above causes and violations the Defendants are indebted to Plaintiff by way of recoupment and setoff and causing the need for injunctive relief.

32

## Fifth Cause of Action
### Intentional Infliction of Emotional Distress

111)   Plaintiff(s) hereby re-alleges, repeats and incorporates by this reference all
allegations and paragraphs above and makes them a part of this claim, and states:

112)   The Defendants acts of using general expression and other false and misleading
information like the word "Loan," and breaching or voiding the contract by not
signing and consenting to the obligation of the contract, then still foreclosing on
defective documents, thereby foreclosing without just cause, are performed
intentionally or with reckless disregard for the truth and Plaintiff's rights.

113)   The Defendant(s) knew or should have known their actions to wrongfully
foreclose on Plaintiff's home would foreseeably cause Plaintiff(s) severe emotional
distress

114)   The Defendant(s)' conduct to foreclosure when they know these violations exist
or should know is outrageous, uncivilized and intolerable.

115)   Plaintiff suffered severe emotional distress as a direct result. Plaintiff(s) suffering
emotional distress is demonstrated by sleeplessness, irritability with the family and
associates, and severe nervousness.

116)   Due to the above violations the Defendant(s) are indebted to Plaintiff(s) by way of
recoupment and setoff for inflicting intentional emotional distress.

-

## Sixth Cause Of Action
### For Quiet Title
### Against all Defendant(s)

33

1

2

3     Plaintiff(s) hereby re-alleges repeats and incorporates by this reference all allegations and

4            paragraphs above and makes them a part of this claim, and states:

5

6     Plaintiff(s) are the owners of the Subject Property per the Mortgage transaction

              performed by Plaintiff(s).

7

8     The basis of Plaintiff(s)' interest, in title is the Mortgage with Defendant(s), granting the

9            Subject Property to Plaintiff, and recorded in the Official Ulster County Recorder's

              Office , State of New York.

10

11    Plaintiff(s) is seeking to quiet title against the claims of Defendant(s) as follows:

12

13    Defendant(s) are seeking to hold themselves out as the fee simple owners or other

14           ownership interests in and of the subject properties, when in fact Plaintiff(s) have an

              interest in such properties held by Defendant(s), when Defendant(s) have no right,

15           title, interest, or estate in the Subject Property, and Plaintiff(s)' interest is superior

16           and adverse to Defendant(s)' claims of ownership.

17

18    Plaintiff(s) seeks to quiet title as of December 15, 2010 or as soon thereafter as Court can

19           make a determination and ruling thereof.

20

21    Plaintiff(s) therefore seek a judicial declaration that the title to the Subject Property is

              vested in Plaintiff(s) alone and that Defendants herein, each of them, be declared to

22           have no estate, right, title, or interest in the Subject Property and that said

23           Defendant(s), and each of them, be forever enjoined from asserting any estate, right,

24           title, or interest in the Subject Property, adverse to Plaintiff(s) herein.

25

26

27    115)    **Judicial Notice:** This court is under obligation to give full faith and credit to the

              case cites of other states, with few exceptions:

28

      34

1
2
3       a.  United States Constitution, Article IV:
4       b.  Section 1. Full faith and credit shall be given in each state to
          the public acts, records, and judicial proceedings of every
5           other state. And the Congress may by general laws prescribe
6           the manner in which such acts, records, and proceedings shall
7           be proved, and the effect thereof
8
9       c.  In Milwaukee County v. M. E. White Co., 296 U.S. 268, 56  S.
          Ct. 229, 80 L. Ed. 220 (1935). The Court held that by
10           including the clause in the Constitution, the Framers  intended
11           to make the states "integral parts of a single nation throughout
12           which a remedy upon a just obligation  might be demanded as
13           of right, irrespective of the state  of its origin."
14
15       d.  In the U.S. Supreme Court case, San Remo Hotel v. City and
          County of San Francisco, California (No. 04-340) the
16           unanimous court decision agrees the courts cannot create  an
17           exception to the "full faith and credit" statute (28 U.S.C. §
18           1738) which  Congress enacted in order to give equal  weight
19           and recognition to opinions between different state and federal
20           courts in compliance with the requirements of  the
          Constitution for the United States of America.
21
22               Demand for Relief Sought
23
24    Wherefore, Plaintiff(s) moves the Court to grant the Plaintiff a voiding of the Order
25 and Decision for Foreclosure Dated March 24, 2010 for fraud on the court, void
26 contracts, and void foreclosure process; and
27
28    For a ruling of lack of standing to foreclose for fraud and void contracts; and

   35

1

2

3          For Order to vacate the non judicial foreclosure default and Order(s) against

4     Plaintiff(s) in this matter. and

5          For Order to Stay/Enjoin any foreclosure auction sale for until after these matter are

6     adjudicated; and

7

8          For Order to Stay/Enjoin any Warrant to Evict for void contracts and void foreclosure

9     process pending the adjudication of these matters; and

10         That the Defendants(s) recover statutory civil penalty of $4,000 for each and every

11    violation, the costs of this action and reasonable attorney fees, should the need for

12    attorney arise, as provided by 15 U.S.C. §1640(a) (2) and (3); and

13

14         The statutory civil penalty of $1,000, the costs of this action and reasonable attorney

15    fees as provided by 15 U.S.C. §1640(a) (2) and (3); and

16         Actual damages in an amount yet to be determined by the court; and

17

18         Punitive damages in the amount of $149,000.00 for fraud by concealment; and

19

20         Damages in an amount yet to be determined for emotional distress; and

21

22         For the costs of suit incurred by the Plaintiff(s); and

23

24         For such other and further relief that the Court may deem just and proper.

25                              **Demand for Jury Trial:**

26    Jury Demanded

27

28

      36

Dated: this _____ 31 _____ day of _Dec_, 2010

The Undersigning, I, me, Richard E. Ulloa and Luis W. Rivera, holder in due course of Original Jurisdiction do herewith affirm, state and say: that I, issue this **Complaint to Stay - Overturn - Set Aside Foreclosure Order and Decision** with sincere intent in truth, that I am competent to state the matters set forth herein, that the contents are true, correct, complete, and certain, admissible as evidence, and reasonable and just to the best of my knowledge, information, and belief.

Notice to the agent is notice to the principal applies to this notice.
Notice to the principal is notice to the agent applies to this notice.

Without Prejudice

Sign Manual

Signed in Red

Richard E. Ulloa

I pray to the almighty Yahweh and not to this court that justice by done.

**ALL RIGHTS RESERVED TO AMEND WITHOUT LEAVE OF COURT**

# 28 USC §1746

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true, complete and correct.  28 USC §1746

Signed on this the twenty seventh day of the twelfth month in the year of our Lord and Savior two thousand ten.

Signed in Red

Richard-Enrique; Ulloa, unrepresented
Address:                                  Phone 845-687-7855
                                          Nation "New York".
                                          general post-office.
                                          Hurley-town.
United States Minor, Outlying Islands. Near. [12443-9998]
richard_ulloa@yahoo.com

37

**Proof and Evidence of Service**

*I*, richard-enrique: (for the family-ulloa): *declare that I served by filing one copy of the "COMPLAINT ON NEW EVIDENCE AND AUDIT" by "*hand-delivered by private carrier-service on "USDC OF NORTHERN NEW YORK" sent by post-office-first class-mail AND OR CERTIFIED MAIL *to the following:*

|  | USDC for NORTHERN DISTRICT OF NY |
|  | SENT TO THE CLERK TO FILE INTO THE |
|  | DOCKET |
| HOGAN & HARTSON LLP<br>ALLISON J. SCHOENTHAL<br>875 THIRD AVE<br>NEW YORK, NEW YORK 10022 | **Stephen M. Kerwin**<br>Office of Attorney General - Albany<br>State of New York<br>The Capitol<br>Albany, NY 12224 |
| FIRST CLASS MAIL |  |

*Richard-Enrique*

richard-enrique:(for the family-ulloa):

**NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT**

38

Exhibit A

Return To:
WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X4701-022
3601 MINNESOTA DRIVE
BLOOMINGTON, MN  55435-5284

**Certified To Be
A True
And Original Copy**

**COPY**

Prepared By:
NANCY HOCHBEIN
WELLS FARGO BANK, N.A.
2650 WELLS FARGO WAY
MINNEAPOLIS, MN  55408-

————————————[Space Above This Line For Recording Data]————————————

0138932585

## MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Security Instrument." This document, which is dated **JANUARY 28, 2005**
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."

**RICHARD E. ULLOA, AN UNMARRIED PERSON, AND LUIS W. RIVERA,
AN UNMARRIED PERSON**

whose address is **22 RIDGE MOUNTAIN ROAD
STONE RIDGE, NY  12484**                    sometimes will be called "Borrower" and
sometimes simply "I" or "me."

(C) "Lender."   **WELLS FARGO BANK, N.A.**
will be called "Lender." Lender is a **National Association**                    which exist under
the laws of **THE UNITED STATES OF AMERICA**                    . Lender's address is
**P. O. BOX 5137, DES MOINES, IA  50306-5137**

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 1 of 20        Initials:

FORM 3033    01/01
SNY01  Rev 08/13/01

(D) "Note ." The note signed by Borrower and dated **JANUARY 28, 2005**          , will be called the "Note." The Note shows that I owe Lender **TWO HUNDRED EIGHT THOUSAND SEVEN HUNDRED FIFTY AND NO/100**                                                    **Dollars** (U.S. $ ...208,750.00..............) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **FEBRUARY 1, 2020**

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider         ☒ Other(s) [specify]
                                                            Schedule A

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance Proceeds, as defined in and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs

the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at

**22 RIDGE MOUNTAIN ROAD**                                                     [Street]
**STONE RIDGE**             [City, Town or Village], New York     **12484**      [Zip Code].
This Property is in **ULSTER**                            County. It has the following legal
description:

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

SNY03   Rev 11/10/00              Page 3 of 20        Initials: DH          FORM 3033   01/01

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

SNY04 Rev 09/25/00                    Page 4 of 20          Initials: _____          FORM 3033    01/01

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes and Insurance.**

**(a) Borrower's Obligations**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Items amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees and Assessments (if any) due on the Property. If these items are Escrow items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might

significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such insurance Proceeds will be applied in the order provided for in Section 2. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

SNY08 Rev 09/25/00                    Page 6 of 20            Initials: RH              FORM 3033   01/01

**6. Borrower's Obligation to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the Insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner

described in Section 3 of this Security Instrument. Nothing is this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) Any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) Any of these agreements will not affect the rights Borrower has -if any- regarding the Mortage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing, or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured , whether or not then due. The excess, if any, will be paid to me . Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in

value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me a notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other

SNY12   Rev 09/25/00              Page 12 of 20         Initials: _____         FORM 3033   1/01

claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note , without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's Interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required Under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first

class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights if the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender my commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides, and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights if Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amont I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment In Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment In Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment In Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                             RICHARD E. ULLOA                -Borrower

_____                    _____ (Seal)
                                             LUIS W. RIVERA                  -Borrower
                                             By Richard E. Ulloa As
                                             Attorney In Fact

STATE OF   GEORGIA                    FULTON        County ss:

On the   26TH      day of  JANUARY, 2005              before me, the undersigned,
a notary public in and for said state, personally appeared

RICHARD E. ULLOA, AN UNMARRIED PERSON,

personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their capacity(ies); and that by
his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information:  61.2-32.20061.2-2-32.200

SNY20   Rev 10/16/00          Page 20 of 20    Initials         FORM 3033   1/01

SCHEDULE A

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Marbletown, County of Ulster and State of New York, bounded and described as follows:

BEGINNING at a point in the center of a 20 foot wide right of way in line with the southerly bounds of a parcel of land conveyed to Robert F. and Mary Alice Azzara dated August 15, 1979 and recorded in the Ulster County Clerk's Office on the same day in Liber 1415 of Deeds, at Page 24 and being located on a course of North 86 degrees 27 minutes 20 seconds East 20.18 feet from a 3/8 inch iron rod marking the southeasterly corner of Azzara aforesaid. Thence running from said point of beginning along the center of said 20 foot wide right of way the following ten (10) courses and distances:

South 11 degrees 19 minutes 00 seconds West, 428.30 feet;
South 28 degrees 24 minutes 30 seconds East, 393.99 feet;
South 17 degrees 37 minutes 10 seconds East, 115.35 fee;
South 01 degree 00 minutes 40 seconds West, 182.62 feet;
South 19 degrees 47 minutes 50 seconds West, 103.82 feet;
South 01 degree 00 minutes 40 seconds West, 420.76 feet;
South 31 degrees 01 minutes 30 seconds East, 154.99 feet;
South 13 degrees 47 minutes 40 seconds West, 104.72 feet;
South 02 degrees 27 minutes 30 seconds East, 283.87 feet; and
South 01 degree 30 minutes 20 seconds West, 111.68 feet to a point

Thence leaving said right of way North 88 degrees 29 minutes 40 seconds West, 371.03 feet to a point. Thence North 00 degrees 27 minutes 50 seconds East, 1810.30 feet to a large upright stone in a pile of stones.  Thence North 09 degrees 40 minutes 40 seconds East, 384.37 feet to a point marking the southwesterly corner of lands of Azzara aforesaid. Thence running along the southerly bounds of Azzara North 86 degrees 27 minutes 20 seconds East 115.08 feet to the aforesaid 3/8 inch iron rod marking the southeasterly corner of Azzara. Thence continuing on the same course North 86 degrees 27 minutes 20 seconds East, 20.18 feet to the point or place of BEGINNING.

Exhibit B

## FIXED RATE NOTE

0139932685

JANUARY 26, 2005              ROCHESTER              NEW YORK              **COPY**
    *Date*                    *City*                  *State*

22 RIDGE MOUNTAIN ROAD, STONE RIDGE, NY  12484
                            *(Property Address)*

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  208,750.00     (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is _____
WELLS FARGO BANK, N.A.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of  8.625  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on   MARCH 1, 2005   .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on
FEBRUARY 1, 2020       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  WELLS FARGO BANK, N.A.
P.O. BOX 10304, DES MOINES, IA  50306-0304
or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      1,832.82    .

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

*NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT*

Form 3233 1/01        Initials _____        Page 1 of 3                    EC200L Rev. 09/06/02

0139932685

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FORM 3033 1/01

Initials

ICOOOL  REV  08/08/02                    Page 2 of 3

0139932885

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RICHARD E. ULLOA                 -Borrower

_____ (Seal)
LUIS W. RIVERA By Richard E.     -Borrower
Ulloa As Attorney In Fact

(SIGN ORIGINAL ONLY)

ECMLL  REV. 00/00/02          Page 3 of 3          FORM 3233 1/01

Exhibit C

**Truth In Lending Disclosure Statement**

**COPY**

| Date | | Loan Number | |
|---|---|---|---|
| JANUARY 26, 2005 | | 0139932685 | |

**Lender** WELLS FARGO BANK, N.A.
2650 WELLS FARGO WAY
MINNEAPOLIS, MN 55408

**Borrower(s)**
RICHARD E. ULLOA
LUIS W. RIVERA

**Property Address**
22 RIDGE MOUNTAIN ROAD
STONE RIDGE, NY 12484

| Loan Amount | Interest Rate | |
|---|---|---|
| $208,750.00 | 6.625% | GUARANTEED |

**Final disclosure**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 6.9510 % | $ 125,413.40 | $ 204,491.73 | $ 329,905.13 |

**Payment Schedule: Payments will be due monthly**

| Number of Payments | Amount of Payment | Payments Begin |
|---|---|---|
| 179 | $ 1,832.82 | 03/01/05 |
| 001 | 1,830.35 | 02/01/20 |
| | | |
| | | |
| | | |
| | | |
| | | |

**Variable Rate**  Your loan, ☐ does, ☒ does not contain a variable-rate feature. Disclosures about the variable-rate feature have been provided to you earlier.

**Security**  You are giving a security interest in ☒ the real property ☐ shares of stock evidencing ownership of the cooperative unit, at the property address referenced above.

**Late Charge**  If a payment is more than 15 days late, you will be charged 2 % of the payment.

**Assumption**  Someone buying your house ☐ may, subject to conditions, ☒ cannot be allowed to assume the remainder of the loan on the original terms.

**Prepayment**  If you pay off your loan early, you ☐ may, ☒ will not have to pay a penalty.
If you pay off your loan early, you ☐ may, ☒ will not be entitled to a refund of part of the finance charge. *

**Demand Feature ☐**  If checked, your loan includes a demand feature.

**Hazard Insurance**  Hazard insurance is required and may be obtained through any company of your choice that is acceptable to the Lender.

You should refer to your Note, Mortgage and other documents for additional information about non-payment, default, any required repayment in full before the scheduled date, prepayment rebates, and penalties.

* If you pay off your loan early, you will not receive a refund of part of the finance charge that you have already paid.

I (We) acknowledge receipt of this Disclosure Statement.

Date: 1/26/05

RICHARD E. ULLOA

LUIS W. RIVERA  By Richard E. Ulloa As
Attorney In Fact

Exhibit D

OMB No. 2502-0265

**COPY**

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. TYPE OF LOAN |
|---|---|
| SETTLEMENT STATEMENT | 1. ☐ FHA  2. ☐ FHMA  3. ☐ CONV. UNINS.<br>4. ☐ VA  5. ☐ CONV. INS. |

| 6. FILE NUMBER: NY-04-000846DG | 7. LOAN NUMBER: 0139932685 |
|---|---|
| 8. MORTGAGE INS. CASE NO.: | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**Certified To Be A True And Original Copy**

| D. NAME & ADDRESS OF BORROWER: | Richard E. Ulloa and Luis W. Rivera  22 Ridge Mountain Road, Ulster, NY 12484 |
|---|---|
| E. NAME & ADDRESS OF SELLER: | |
| F. NAME & ADDRESS OF LENDER: | Wells Fargo Bank, NA  2650 Wells Fargo Way, Minneapolis, MN 55408 |
| G. PROPERTY LOCATION: | 22 Ridge Mountain Road, Ulster, NY 12484 |
| H. SETTLEMENT AGENT: | Public Abstract Corporation |
| PLACE OF SETTLEMENT: | 16 West Main Street, Suite 430, Rochester, NY 14614 (585) 399-8200 |
| I. SETTLEMENT DATE: 1/26/2005  Final | K. DISBURSEMENT DATE: 1/31/2005 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 32,907.41 | 403. | |
| 104. Payoff To EMC Mortgage Corporation | 165,767.62 | 404. | |
| 105. Payoff To NYS Dept Of Taxation & Finance | 1,135.71 | 405. | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | **Adjustments For Items Paid By Seller In Advance:** | |
| 106. City/town taxes     to | | 406. City/town taxes     to | |
| 107. County taxes     to | | 407. County taxes     to | |
| 108. Assessments     to | | 408. Assessments     to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower:** | 199,810.74 | **420. Gross Amount Due To Seller:** | |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 208,750.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1st Mtg. Ln. | |
| 205. | | 505. Payoff 2nd Mtg. Ln. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Unpaid By Seller:** | | **Adjustments For Items Unpaid By Seller:** | |
| 210. City/town taxes     to | | 510. City/town taxes     to | |
| 211. County taxes     to | | 511. County taxes     to | |
| 212. Assessments     to | | 512. Assessments     to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| | | | |
| **220. Total Paid By/For Borrower:** | 208,750.00 | **520. Total Reductions In Amount Due Seller:** | |
| **300. Cash At Settlement From/To Borrower:** | | **600. Cash At Settlement From/To Seller:** | |
| 301. Gross amount due from borrower (line 120) | 199,810.74 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 208,750.00 | 602. Less reductions in amount due seller (line 520) | |
| **303. Cash (☐FROM) ☒TO) Borrower:** | 8,939.26 | **603. Cash (☐TO) ☐FROM) Seller:** | 0.00 |

Previous Edition Is Obsolete
Form No. 1581
3/86

SB-4-3538-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

| | SETTLEMENT    CHARGES | Escrow: NY-04-000846DG | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission: | | | | |
| Based On Price $          @          % = | | | | |
| Division of Commission (line 700) As Follows: | | | | |
| 701. $          to | | | | |
| 702. $          to | | | | |
| 703. Commission paid at settlement | | | | |
| 704. | | | | |
| 800. Items Payable In Connection With Loan: | | | | |
| 801. Loan Origination fee          % | | | | |
| 802. Loan Discount          1.2500          % Wells Fargo Bank, NA | | | 2,609.37 | |
| 803. Appraisal fee to: | | | | |
| 804. Credit report to: Wells Fargo Bank, NA POC          $16.00 | | | | |
| 805. Lender's inspection fee | | | | |
| 806. Mortgage insurance application fee to | | | | |
| 807. Assumption fee | | | | |
| 808. Appraisal Fee To: Wells Fargo Bank, NA POC          $325.00 | | | | |
| 809. Underwriting Fee To: Wells Fargo Bank, NA | | | 400.00 | |
| 810. Courier Fee To: Wells Fargo Bank, NA | | | 35.00 | |
| 811. Processing Fee To: Wells Fargo Bank, NA | | | 250.00 | |
| 812. Tax Registration To: Wells Fargo Real Estate Tax Service | | | 80.00 | |
| 813. Flood Determination To: Wells Fargo Flood Service | | | 16.00 | |
| 814. | | | | |
| 815. | | | | |
| 816. | | | | |
| 900. Items Required By Lender To Be Paid In Advance: | | | | |
| 901. Interest from  1/31/2005  to  2/01/2005  @$          /day | | | 37.89 | |
| 902. Mortgage insurance premium for          mo. to | | | | |
| 903. Hazard insurance premium for          yrs. to | | | | |
| 904. Flood insurance premium for          yrs. to | | | | |
| 905. | | | | |
| 906. | | | | |
| 1000. Reserves Deposited With Lender: | | | | |
| 1001. Hazard insurance          6 months @ $          110.83 per month | | | 664.98 | |
| 1002. Mortgage insurance          months @ $          per month | | | | |
| 1003. City property taxes          4 months @ $          126.52 per month | | | 506.08 | |
| 1004. County property taxes          months @ $          per month | | | | |
| 1005. Annual assessments          months @ $          per month | | | | |
| 1006. Flood insurance          months @ $          per month | | | | |
| 1007. School Tax Reserves          10 months @ $          365.03 per month | | | 3,650.30 | |
| 1008. Aggregate Adjustment | | | (1,645.79) | |
| 1009. | | | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to Public Abstract Corporation | | | 500.00 | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| (includes above item Numbers:          ) | | | | |
| 1108. Title insurance to Public Abstract Corporation | | | | |
| (includes above item Numbers:          ) | | | 775.00 | |
| 1109. Lender's coverage  $208,750.00  Premium:  $775.00 | | | | |
| 1110. Owner's coverage  $ | | | | |
| 1111. Courier Fee to Public Abstract Corporation | | | 50.00 | |
| 1112. Tax and BK Search to Public Abstract Corporation | | | 200.00 | |
| 1113. | | | | |
| 1114. | | | | |
| 1200. Government Recording and Transfer Charges: | | | | |
| 1201. Recording fees:  Deed $          ;Mortgage $          94.00          ;Releases $ | | | 94.00 | |
| 1202. City/county tax/stamps: Deed $          ;Mortgage $ | | | | |
| 1203. State tax/Stamps:          Deed $          ;Mortgage $          1,043.75 | | | 1,043.75 | |
| 1204. NYS Mortgage Tax Pd By Lender To: Ulster County Clerk POC          $521.75 | | | | |
| 1205. POA RECORDING FEE to Ulster County Clerk | | | 37.00 | |
| 1300. Additional Settlement Charges: | | | | |
| 1301. Survey to | | | | |
| 1302. Pest inspection to | | | | |
| 1303. Credit Card to Bank One | | | 6,804.00 | |
| 1304. Bank Of America to Credit Card | | | 2,067.00 | |
| 1305. Bank Of America to Credit Card | | | 2,570.00 | |
| 1306. Discover to Credit Card | | | 2,258.00 | |
| 1307. Ulster Credit Union to Credit Card | | | 3,559.00 | |
| 1308. 2005 County Taxes to Receiver Of Taxes | | | 6,345.83 | |
| 1309. | | | | |
| 1310. | | | | |
| 1311. | | | | |
| 1312. | | | | |
| 1313. | | | | |
| 1400. Total Settlement Charge (Enter on line 103, Section J - and - line 502, Section K) | | | 32,907.41 | |

Form No. 1582                          Page 2 of 3                          SB-4-3538-000-1

**SELLER'S AND/OR BORROWER'S STATEMENT**    Escrow: · NY-04-000846DG

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrowers/Purchasers                              Sellers

Richard E. Ulloa

Luis W. Rivera  By Richard E. Ulloa As
        Attorney In Fact

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____   Date: _1/6/05_
        Public Abstract Corporation

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.



**COPY**

### Good Faith Estimate of Settlement Costs

| | |
|---|---|
| **Lender** WELLS FARGO BANK, N.A. | **Loan Number** 0139932685 |
| **Applicant(s)** RICHARD ULLOA          LUIS RIVERA | **Loan Type** FIX30 / **Date** 08/25/2004 |
| | **Sales Price** N/A / **Mortgage Amount** $182,000.00 |
| **Property Address** 22 RIDGE MOUNTAIN STONE RIDGE NY, 12484 | **Interest Rate** 6.950% PLAY |

**ESTIMATED MONTHLY PAYMENT**

| | | | |
|---|---|---|---|
| Principal and Interest | $ 1,204.75 | Mortgage Insurance | $ .00 |
| Hazard Insurance | $ 85.00 | Taxes | $ 300.00 |
| | | Total monthly payment | $ 1,589.75 |

**ITEMS PAYABLE IN CONNECTION WITH LOAN**

| | |
|---|---|
| 0801 LOAN ORIGINATION FEE   0.000% | $ .00 |
| 0802 LOAN DISCOUNT   1.250% | $ 2,275.00 |
| 0803 APPRAISAL | $ 325.00 |
| 0804 CREDIT REPORT | $ 16.00 |
| 0807 ASSUMPTION FEE | $ .00 |
| 0808 BROKER FEE | $ .00 |
| 0809 FINAL INSPECTION | $ .00 |
| 0810 UNDERWRITING REVIEW FEE | $ 400.00 |
| 0821 GUARANTEED CLOSING COST | $ .00 |
| 0901 INTEREST FOR 16 DAYS @ $    34.65 PER DAY** | $ 554.40 |
| 0902 MORTGAGE INSURANCE PREMIUM | |
| 0905 TAX SERVICE | $ 80.00 |

**TITLE COMPANY CHARGES**

| | |
|---|---|
| 1101 SETTLEMENT OR CLOSING FEE | $ 650.00 |
| 1104 NY ATTY CEM PREPARATION (IF CEM SELECTED) | $ 250.00 |
| 1108 TITLE INSURANCE** | $ 684.78 |
| 1110 COMPREHENSIVE/SURVEY ENDORSEMENT | $ 166.00 |
| 1112 MUNICIPAL SEARCH | $ 150.00 |
| 1113 TITLE CO. RELEASE ("PICKUP") FEE (IF REQUIRED) | $ 130.00 |
| 1115 TITLE ENDORSEMENTS | $ 25.00 |

**GOVERNMENT RECORDING & TRANSFER CHARGES**

| | |
|---|---|
| 1201 RECORDING FEE | $ 320.00 |
| 1202 NEW YORK MORTGAGE RECORDING TAX | $ 910.00 |

**ADDITIONAL SETTLEMENT CHARGES**

| | |
|---|---|
| 1305 APPLICATION | $ .00 |
| 1311 CLOSING AGENT COURIER FEE | $ .00 |
| 1306 PROCESSING FEE | $ 350.00 |
| 1307 FLOOD CERT | $ 16.00 |
| **ESTIMATED TOTAL (Excluding Escrow Reserves)** | $ 7,302.18 |

**ESCROW RESERVES (ESTIMATED)**

| | |
|---|---|
| 1001 Hazard Insurance Escrow  5 months @ $    85.00 per month | $ 425.00 |
| 1002 Mortgage Insurance Escrow  1 months @ $    0.00 per month | $ .00 |
| 1003 Tax and Assessment Reserves | $ 3,600.00 |
|       CNT  12 months @ $   300.00 per month | |
| 1006 Flood Insurance Escrow  0 months @ $    0.00 | $ .00 |
| 1009 Aggregate Accounting Adjustment*** | ($ 425.00) |

*Title Insurance. This estimate represents the costs of title insurance to protect the Lender only.  If you choose to purchase an Owner's title insurance policy to protect your interests in the property, the cost of the Lender's and Owner's policy is estimated to be   $342.61 and $1,471.15, respectively, for a total cost $1,813.76.  These rates only apply when the Lender's and Owner's policies are purchased simultaneously from a participating title company.  Contact your closing agent with questions.

** Prepaid Interest. Based on the interest rate quoted at time of application, multiplied by number of days from your estimated closing date to the end of the month.

***Aggregate Accounting Adjustment. Escrow reserves are calculated in accordance with the Real Estate Settlement Procedures Act (RESPA). RESPA methodology requires lenders to calculate each escrow deposit as a single item, then pooled as a group (in the aggregate). The Aggregate Adjustment is the difference (i.e., the credit to the consumer) between the single item analysis calculation and the aggregate methodology.



**Good Faith Estimate Providers of Service**

The information provided on page 1 reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimated – the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained on the HUD-1 Settlement Statement which you will be receiving at settlement. The HUD-1 Settlement Statement will show you the actual cost for items paid at settlement.

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended. Additional information can be found in the HUD Special Information Booklet "Settlement Costs and Helpful Information" provided by your Mortgage Broker or Lender.

**Particular Provider and Required Use Information.** The Lender requires the use of specific providers of certain services in connection with your loan. Listed below are the service providers from which the Lender will choose for your loan. The estimates on page 1 are based on the charges for these designated providers. The Lender has repeatedly required borrowers to use these providers within the past 12 months. RELS Reporting Services (RELS) and Valuation Information Technology, LLC (Value-IT) are affiliates of the Lender.

**Credit Bureaus**

RELS REPORTING SERVICES
1500 NW BETHANY BLVD #300
BEAVERTON, OR 97006
(877) 216-9150

EQUIFAX MTG SERVICES
P.O. BOX 740006
ATLANTA, GA 30374-0006
(800) 446-5218

**Appraisal Services**

LENDER'S SERVICE, INC.
700 CHERRINGTON PARKWAY
CORAOPOLIS, PA 15108-4306
(800) 722-0300

VALUATION INFO TECHNOLOGY
800 LASALLE AVENUE, #1000
MINNEAPOLIS, MN 55402-2021
(800) 825-8483

**Flood Zone Determination Services**

WELLS FARGO FLOOD SERVICE
800 S HWY 169, 12TH FLOOR
ST. LOUIS PARK, MN 55426
(800) 805-9423

FLOOD DATA SERVICES, INC.
11902 BURNET ROAD, #400
AUSTIN, TX 78758-2902
(800) 447-1772

**Document Preparation Services for Loans with a Property Address in Texas**

BROWN, FOWLER & ALSUP
8955 KATY FREEWAY
HOUSTON, TX 77024
(713) 468-0400

**Tax Service Vendors**

WELLS FARGO REAL ESTATE TAX SERVICES, LLC
1 HOME CAMPUS X2502-011
DES MOINES, IA 50328-0001
(800) 499-4829

FIRST AMERICAN REAL ESTATE INFORMATION SERVICES, INC.
1400 CORPORATE DRIVE
IRVING, TX 75038
(800) 588-7770

**Title Guaranty Certificate for loans with a Property Address in Iowa**

TITLE GUARANTY DIVISION
IOWA FINANCE AUTHORY
200 EAST GRAND AVE. #350
DES MOINES, IA 50309
(515) 242-4989

**If the subject property is located in New York.**
The Lender will require that a New York law firm satisfactory to Lender be designated to represent the Lender and provide the closing/settlement services. The estimated settlement or closing fee is based on the estimated charges of New York firms with whom the Lender has relationships. The Lender has repeatedly required borrowers to use the services of a New York law firm within the last 12 months.

**If mortgage insurance is required**
The Lender will designate a mortgage insurance company from an approved list to provide private mortgage insurance. The estimated mortgage insurance premium is based on the estimated charges of the designated provider. The Lender has repeatedly required borrowers to use the services of one of the providers within the last 12 months.

RD115L Rev.11/02/01

Exhibit E

Exhibit F

FROM:
RICHARD ENRIQUE ULLOA
C/O general post-office 77
STONE RIDGE, NEW YORK [12484]

DATE: November 23, 2009

TO:

| WELLS FARGO BANK N.A. | STEVEN J. BAUM, P.C.. |
|---|---|
| WELLS FARGO HOME MORTGAGE | C/O SUZZANNE E. PANARA |
| JAMES M. STROTHER | 220 Northpoint Parkway, Suite G |
| 420 Montgomery Street | Amherst, New York, 14228 |
| San Francisco, CA 94104 | 7009-0080-0001-5992-8886 |
| 7009-0080-0001-5992-8879 | |
| MERS | RENEE GARCIA |
| PO BOX 2026 | HOGAN & HARTSON LLP |
| FLINT, MI 48501-2026 | 875 Third Avenue |
| 7009-0080-0001-5992-8893 | New York, New York 10022 |
| | 7009-0080-0001-5992-8916 |
| PUBLIC ABSTRACT CORPORATION | |
| 16 WEST MAIN STREET | |
| ROCHESTER, NEW YORK 14614 | |
| 7009-0080-0001-5992-8909 | |

Re: Original Loan Number:# 708-0139932685
Commonly Known Address: 22 RIDGE MTN ROAD STONE RIDGE, NEW YORK 12484
Deed of Trust Record Instrument Number: LIBER 1743 PAGE 0039; Recorded Date
FEBRUARY 01, 2005

## NOTICE OF RIGHT TO CANCEL
Notice to Agent is Notice to Principal
Notice to Principal is Notice to Agent

**Parties:** RICHARD ENRIQUE ULLOA/Alleged Borrower (hereinafter **"Borrower"**) and
WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE/Alleged Lender
(hereinafter **"Lender"**).

1

**ATTENTION:** All above named Respondents

       This communication will serve as our **NOTICE of RIGHT to CANCEL** dated November 23, 2009, Truth in Lending Act ("TILA"), 15 U.S.C. §1601 et seq; 12 C.F.R part 226 allows three (3) days to review Disclosure Documents. The referenced 'Three Day Right to Cancel' must have a trigger to being. That trigger, is when the Lender has provided the Borrower with **ALL** of the required Disclosures under TILA and that the same are true, complete, accurate and timely provided.

Being as the entire purported loan/mortgage process and Deed of Trust referenced herein and throughout was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent misrepresentation, the borrower has other recourse, right and cause of action under numerous state and federal statutes. Acts of fraud taint/void everything it touches as the United State Supreme Court has declared in <u>United States v. Throckmorton, 98 U.S. 61 (1878)</u> that: *"There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents and even judgments."*

To this date, Lender has NEVER provided Borrower with true, complete, accurate or timely documents as required. Only after such provisions have been done, can the 'three (3) day Right to Cancel' Period begin. If the required full Disclosures have not been provided, then the period in which to Cancel is extended for up to three (3) years, OR until Lender moves to foreclose. The records thus far evidence, that Borrower has requested to cancel within the stipulated three year time period, while still waiting to receive all TRUTH IN LENDING disclosures as required by Federal Law, the same of which have never been received.

A close perusal and audit of Borrower's mortgage/loan documents has revealed certain Disclosure Violation; and, that the Borrower has the remedial right and remedy under (UCC 1-201(32)(34)), inter alia, to invoke their Right of Rescission ("ROR") as further evidenced by the original NOTICE OF RIGHT TO CANCEL. You will also please find Borrower's signed and dated NOTICE to the Lender(s), Successors(s) and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such Notice was not provided, this written Notice of Communication is Provided In lieu thereof.

After Sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's property within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be 'impractical' or 'unfair' for the Borrower to return

the property when gross discrepancies, fraud, or other wrongful acts are discovered; then, they may offer its "Reasonable Value".

In the event the Lender should fail or refuse to take possession of the property or return the borrower's money offer within twenty (20)days, Borrowers may then regain and acquire all rights to a clear title and reconveyance under Federal Law and Provisions of TILA.

Additionally, Borrower has the right to offer Lender a Reasonable Value; however, the penalty that a bank can face for violations TILA, State and Federal law(s) can be as much as triple damages. For example, triple the amount of the interest the bank stood to fraudulently make the following offer: Borrowers will forgive WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE any liability incurred by its wrongful actions, provided WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE rightfully forgive Borrower the full amount of mortgage/credit WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE fraudulently allege to have given. In addition, Borrowers make the one time demand of $150,000.00 for any loss, damage, and injury they have sustained; and, that WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE also immediately remove all and any negative comments on Borrower's credit report attributed to this transaction.

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt shall constitute this Notice of Right to Cancel as valid and fully agreed and accepted pursuant to the terms and conditions as set forth herein.


Respectfully,


RICHARD ENRIQUE ULLOA


STATE OF NEW YORK
COUNTY OF ULSTER

ON THE 23 DAY OF NOV 20 09, BEFORE ME PERSONALLY CAME

Richard Enrique Ulloa

TO ME PERSONALLY KNOWN
EXECUTED THE FOREGOING INSTRUMENT

NOTARY CATHERINE A. CAIRO DAVIS
Notary Public, State of New York
4843340
Qualified in Ulster County
Commission Expires 07/31/2013

3

## CERTIFICATION OF MAILING

I, Richard Enrique Ulloa do hereby solemnly declare and affirm by my signature below, that on 11/23/2009. I did cause to be delivered First Class US MAIL, a true and correct copy of the following documents:  Notice of Right to Cancel; Qualified Written Request, and this Certificate of Mailing to the parties and locations listed below:

Date: 11/23/09

Signed. sworn 11/23/09

Katherine M. Davis

KATHERINE A. CAIRO DAVIS
Notary Public, State of New York
4843340
Qualified in Ulster County
Commission Expires 7/31/2013

| | |
|---|---|
| WELLS FARGO BANK N.A. | STEVEN J. BAUM, P.C.. |
| WELLS FARGO HOME MORTGAGE | C/O SUZZANNE E. PANARA |
| JAMES M. STROTHER | 220 Northpoint Parkway, Suite G |
| 420 Montgomery Street | Amherst, New York, 14228 |
| San Francisco, CA 94104 | 7009-0080-0001-5992-8886 |
| 7009-0080-0001-5992-8879 | |
| | |
| MERS | RENEE GARCIA |
| PO BOX 2026 | HOGAN & HARTSON LLP |
| FLINT, MI 48501-2026 | 875 Third Avenue |
| 7009-0080-0001-5992-8893 | New York, New York 10022 |
| | 7009-0080-0001-5992-8916 |
| PUBLIC ABSTRACT CORPORATION | |
| 16 WEST MAIN STREET | |
| ROCHESTER, NEW YORK 14614 | |
| 7009-0080-0001-5992-8909 | |

4

FROM:
RICHARD ENRIQUE ULLOA
C/O general post-office 771
STONE RIDGE, NEW YORK [12484]

DATE: NOVEMBER 23, 2009

| WELLS FARGO BANK N.A. | STEVEN J. BAUM, P.C.. |
|---|---|
| **WELLS FARGO HOME MORTGAGE** | **C/O SUZZANNE E. PANARA** |
| **JAMES M. STROTHER** | **220 Northpoint Parkway, Suite G** |
| **420 Montgomery Street** | **Amherst, New York, 14228** |
| **San Francisco, CA 94104** | **7009-0080-0001-5992-8886** |
| **7009-0080-0001-5992-8879** | |
| | |
| **MERS** | **RENEE GARCIA** |
| **PO BOX 2026** | **HOGAN & HARTSON LLP** |
| **FLINT, MI 48501-2026** | **875 Third Avenue** |
| **7009-0080-0001-5992-8893** | **New York, New York 10022** |
| | **7009-0080-0001-5992-8916** |
| **PUBLIC ABSTRACT CORPORATION** | |
| **16 WEST MAIN STREET** | |
| **ROCHESTER, NEW YORK 14614** | |
| **7009-0080-0001-5992-8909** | |

**RE: Original Loan No. 708-0139932685**
**Commonly Known Address: 22 RIDGE MTN ROAD STONE RIDGE, NEW YORK 12484**
**Deed of Trust Record Instrument Number: LIBER 1743 PAGE 0039; Recorded Date**
**FEBRUARY 01, 2005**

# NOTICE OF REVOCATION OF POWER OF ATTORNEY

**ATTENTION:** All Respondents listed above.

RICHARD ENRIQUE ULLOA DOES HEREBY DECLARE:

**That,** due to the discovery of various elements of fraud, fraudulent inducement, fraudulent misrepresentation, entrapment and non disclosure resulting in the deprivation of my property by WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE audit and close perusal of the purported Loan, Trust of Deed, and Security Agreement. I, RICHARD ENRIQUE ULLOA do hereby refuse to knowingly accept or otherwise participate in ANY part of fraud and other wrongful actions involving the purported Promissory Note/Security Instrument/Trust Deed; and, further do hereby revoke, rescind, and terminate all our signatures relating to any and all said deeds, notes, and agreements from their inception.

Furthermore, I, RICHARD ENRIQUE ULLOA do hereby revoke, terminate and rescind all Powers of Attorney, in fact or otherwise, previously assigned by us, implied in law, by trust or otherwise, with or without our consent and or knowledge, as such pertains to any property, real or personal, promissory note, deed of trust and mortgage signed on the date of August 2, 2005 or otherwise, under **Deed of Trust Record Instrument Number: LIBER 1743 PAGE 0039; Recorded Date FEBRUARY 01, 2005** involving said property more commonly known and identified as: 22 RIDGE MTN ROAD, STONE RIDGE, NEW YORK, [12484]

_____

RICHARD ENRIQUE ULLOA

## **Acknowledgment**

State of New York           )
                            )
County of Ulster            )

Subscribed and sworn to (or affirmed) before me on this **23** day of November, 2009 by

_Richard Enrique Ulloa_____, proved to me on the basis of satisfactory evidence to be the

person(s) who appeared before me.

Signature _Katherine A. Cairo Davis_ (seal)

KATHERINE A. CAIRO DAVIS
Notary Public, State of New York
4843340
Qualified in Ulster County
Commission Expires 07/31/2013

FROM:
Richard Enrique Ulloa
c/o general post-office 771
Stone Ridge, New York [12484]

DATE: November 19, 2009

TO:

| WELLS FARGO BANK N.A. | STEVEN J. BAUM, P.C.. |
|---|---|
| WELLS FARGO HOME MORTGAGE | C/O SUZZANNE E. PANARA |
| JAMES M. STROTHER | 220 Northpoint Parkway, Suite G |
| 420 Montgomery Street | Amherst, New York, 14228 |
| San Francisco, CA 94104 | 7009-0080-0001-5992-8886 |
| 7009-0080-0001-5992-8879 | |
| | |
| MERS | RENEE GARCIA |
| PO BOX 2026 | HOGAN & HARTSON LLP |
| FLINT, MI 48501-2026 | 875 Third Avenue |
| 7009-0080-0001-5992-8893 | New York, New York 10022 |
| | 7009-0080-0001-5992-8916 |
| PUBLIC ABSTRACT CORPORATION | |
| 16 WEST MAIN STREET | |
| ROCHESTER, NEW YORK 14614 | |
| 7009-0080-0001-5992-8909 | |

## ALL MORTGAGE(S), TRUSTEE(S), BENEFICIARY AND SUCCESSORS

### QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, FOIA REQUEST, SIGNATURE REVOCATION, and AFFIDAVIT.

Please be advised that this letter is a "qualified written request," DEMAND, AFFIDAVIT and Amendment in compliance with RESPA and under the DEED OF TRUST/SECURITY AGREEMENT/NOTE created namely the Loan # 708-0139932685, **WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, PUBLIC ABSTRACT CORPORATION and MERS.**

Reference: RICHARD ENRIQUE ULLOA 's Alleged Account Number: # **708-0139932685**

To whom it may concern,

This letter is to inquire about the accounting and servicing of this agreement and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial

ownership, charges, credits, debits, transactions, reversals, actions, payments, inception of my loan to the present date.

To this date, the information, documents I have, that you have sent, and the many conversations with your customer representatives/agents, have been unproductive and have not answered many or any questions.

It has come to my attention that your company may have been accused of engaging in one or more predatory servicing or lending and servicing schemes. As a consumer, I am extremely troubled to know about such practices by anyone; let alone **WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, PUBLIC ABSTRACT CORPORATION and MERS** financing company or anyone who has any interest in this matter. I am concerned that such abuses are targeting the **uneducated** and **uninformed/unaware** consumer and disadvantaged, poor, elderly and minority Americans.

Regardless, I am most concerned. This situation worries me that potential fraudulent and deceptive practices by unscrupulous brokers; sales and transfers of credit and or servicing rights; deceptive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, loan account and/or the debt or payments that I am currently, or may be legally obligated to.

At this time, I hereby demand absolute first hand evidence from you of the original blue ink signature of the note to verify holder in due course of this alleged debt and or security regarding account # **708-0139932685**

In the case, that you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned my note. I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent of the actual evidence of the security I have no choice, but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By debt I am referring to the principle balance you claim I owe; the calculated monthly payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, I need you to conduct a complete exam, audit, review and accounting of this account from its inception through the present date. Upon receipt

2

of this letter, please refrain from reporting any negative credit information to any credit reporting agency until you respond to each of the above mentioned requests.

I also request that you kindly conduct this investigation and audit of this account by a certified public neutral party, since its origination to validate the debt you currently claim I owe. I would like you to validate this debt so that it is accurate to the penny.

Please do not rely on previous servicers or originator records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account. I understand that potential abuses by you or previous services could have deceptively, wrongfully, unlawfully, and/ or illegally: 1) Increased the principal balance I owe; 2) decreased the proper amount applied and attributed toward principle on this account; and/ or 3) assessed, charged and/ or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this DEED OF TRUST/ SECURITY AGREEMENT/NOTE.

It is extremely urgent that you insure that I have not been victim of such predatory servicing or lending practices.

To insure this, I am authorizing a thorough review, examination, accounting and audit of account # 708-0139932685 by a neutral auditing, CPA, and predatory servicing or lending expert. This exam and audit will review this account file from the date of initial contact, application and the origination of this account to the present date written above.

Again this is a Qualified Written Request under the DEED OF TRUST/SECURITY AGREEMENT/ NOTE and my fiduciary will provide for me the substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within ten (10) days of its receipt.

In order to conduct the examination and audit of this loan, I need to have **full** and **immediate disclosure** including copies of all pertinent information regarding this loan. The

3

documents, requests and answers to my questions are needed by me and others to unsure that this loan:

1. Was originated in lawful compliance with all federal and state laws, regulation including, but not limited to Title 62 of the Revised Statutes of the Fair Debt Collection Act, and other laws such as Real Estate Settlement Procedure Act  12 U.S.C. § 2601 et. seq.; that any and all sales or transfers of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with **COMPLETE** disclosure to all parties with an interest.  This request requires signatures of both parties that constitute a loan.  As you know, it takes two or more parties signature, meeting of the minds, and exchange of valuable consideration to create a valid contract.

That, the claimed holder in due course of the monetary instrument/title/asset/note is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments.

That, all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees, etc. where and still are properly disclosed to me.

That, each servicers and/or sub servicers of this loan and or agreement has serviced this loan and or agreement in accordance with statute, law, and the terms of agreement, monetary instrument and or title.

That this agreement and or loan account has properly been credited, debited, adjusted, amortized and charged correctly; that the principal and fees have been properly calculated and applied to this loan.

That any principal balance has been properly calculated, amortized and accounted for; that no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account.

4

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, <u>certified</u> in writing, under penalty of perjury to various servicing questions described below.

For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account number or my name,

As such, please send to me and my Notary Fiduciary at: 3775 MAIN STREET, STONE RIDGE, NEW YORK 12484, copies of the documents requested below as soon as possible. Please also provide copies of:

1)    Any certified or un-certified security, front and back, used for the funding of account # 708-0139932685.

2)    Any and all "Pool Agreement(s)", including account # 708-0139932685 between WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , MERS and any government sponsored entity, hereinafter (GSE).

3)    Any and all "Deposit Agreement(s)" regarding any "Pool Agreement" including account# 708-0139932685, between WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , MERS and any GSE.

4)    Any and all "Servicing Agreement(s)" between WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , MERS and any GSE.

5)    Any and all "Custodial Agreement(s)" between, WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , MERS and any GSE.

6)    Any and all "Master Purchasing Agreement" between WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , LOAN # 708-0139932685 and MERS, and any GSE.

7)    **DEED OF TRUST/SECURITY AGREEMENT,** WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, LOAN # 708-0139932685 and MERS, and any GSE.

8)    Any and all "Commitment to Guarantee" agreement(s) between WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE  LOAN # 708-0139932685 and MERS, and any GSE.

9)    Any and all "Commitment to Guarantee" agreement(s) between WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE  LOAN # 708-0139932685 and MERS, and any GSE.

10)    Any and all "Release of Document" agreement(s) between WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE  LOAN # 708-0139932685 and MERS, and any GSE.

5

11)    Any and all "Master Agreement for Servicer's Principle and Interest Custodial
       Account" between WELLS FARGO BANK, N.A., WELLS FARGO HOME
       MORTGAGE  LOAN # 708-0139932685 and MERS, and any GSE.
12)    Any and all "Servicers Escrow Custodial Account" between WELLS FARGO
       BANK, N.A., WELLS FARGO HOME MORTGAGE  LOAN # 708-0139932685
       and MERS, and any GSE.
13)    Any and all "Release of Interest" agreement(s) between WELLS FARGO BANK,
       N.A., WELLS FARGO HOME MORTGAGE  LOAN # 708-0139932685 and
       MERS, and any GSE.
14)    Please send to the Purchaser a copy of any and all document(s) establishing any
       Grantor for this Title **and** any NOTE.
15)    All assignments, transfers, allonge, or other document evidencing a transfer, sale
       or assignment of this loan, monetary instrument or other document that secures
       payment by me to this obligation in this account from the inception of this account to
       the present date.
16)    The front and back of each and every canceled check, money order, draft, debit or
       credit notice issued to any Servicers of this account for payment of any monthly
       payment, other payment, late charge, fee or expense on this account.
17)    The front and back of each and every canceled check, draft, or debit notice issued
       for payment of closing costs, fees and expenses listed on any and all disclosure
       statements(s) including, but not limited to, appraisal fees, etc.
18)    Front and back copies of all payment receipts, checks, money, orders, drafts,
       automatic debits and written evidence of payments made by other or me on this
       account.
19)    All letters, statements and documents sent to me by your company.
20)    All letters, statement and documents sent to me by your agents, attorneys or
       representatives of your company.
21)    All agreements, contracts and understandings with vendors that have been paid
       for any charge on this account from the inception of this account to the present date.
22)    All account servicing records, payment payoffs, payoff calculations, payment
       records, transaction histories, account histories, accounting records, ledgers, and
       documents that relate to the accounting of this account from the inception of this
       account until present date.
23)    All account servicing transaction records, ledgers, registers and similar items
       detailing how this account has been serviced from the date of inception of this
       account until present date.
24)    Who loaned the money for this loan, or was it funded by MY OWN, RICHARD
       ENRIQUE ULLOA pass-through account known as MY Social Security Number.

Further, In order to conduct the audit and review of this account, and to determine all proper

amounts due, I need the following answers to questions concerning the servicing and accounting

of this account from its inception to the present date. Accordingly, can you please provide me, in

writing, the answers to the questions listed below.

## ACCOUNT ACCOUNTING & SERVICING SYSTEMS

1) Please indentify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, so that these experts can decipher the data provided.

2) For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date; please provide the name and address of the company or party that designed and sold the system.

3) For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each systems so that I and others can adequately audit this account.

## DEBITS & CREDITS

1) In a spreadsheet form or in letter form in columnar format, please detail for me each and every credit on this account and the date such credit was posted tot his account, as well as the date any credit was received.

2) In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account and the date debit was posted to this account as well as the date any debit was received.

3) For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilize?

4) For each transaction code, please provide me with the master transaction code lost used by you or previous servicers.

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1) Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2) Has any previous servicers or sub-servicers of this loan reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3) Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4) Are late fees considered interest? Yes or No?

5) Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6) Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7) If yes, please describe what expenses or charges were charged or assessed to this account?

7

8) Please describe for me in writing what expenses you or other undertook due to any payment I made, which was late?

9) Please describe for me in writing what damages you or others undertook due to any payment I made, which was late?

10) Please identify for me in writing the provision, paragraph, section or sentence of any note, or any agreement I signed authorized the assessment or collection of late fees?

11) Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to present date.

12) Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13) Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustments were made and the reason for such adjustments.

14) Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15) Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16) Have any late charges been assessed to this account? Yes or No?

17) If yes, how much in total late charges have been assessed to this account from the inception of this account until present date? **PLEASE PROVIDE THE AMOUNT**.

18) Please provide me with the exact months or payment dates you or other previous servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19) Have late charges been collected on this account from the inception of this account until present date? Yes or No?

20) If yes, how much in total late charges have been collected on this account from the inception of this account until present date?

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

**Power of Attorney: When WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , PUBLIC ABSTRACT CORPORATION and MERS or any other entities notice here** fails by not rebutting to any part of this "Request" WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , PUBLIC ABSTRACT CORPORATION , and MERS or any other entities noticed here, agrees with the granting unto Richard Enrique Ulloa unlimited **Power of Attorney** and any and all full authorization in signing or endorsing **WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , PUBLIC ABSTRACT CORPORATION, MERS or any other entities noticed here including any/all named SUCCESSOR, ASSIGNS, TRANSFEREE,** name upon any instrument in satisfaction of the obligation(s) of this **REQUEST**/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceedings shall not discharge any obligation(s) of this agreement. Consent and agreement with this Power of Attorney by WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, **or any other entities noticed here** waives any and all claims of

8

FRANCES SAWYER of, and or defenses and remains in effect until satisfaction of all obligation(s) by **WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE , PUBLIC ABSTRACT CORPORATION , MERS or any other entities noticed here** has been satisfied.

**Effective immediately Buyer, Purchaser, Grantor, Trustor RICHARD ENRIQUE ULLOA**
forever Revokes, Cancels, Voids, Rescinds any Power of Attorney, authority or other granted, granting by signatures, assigned or assigning to any parties, including **WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE  or any other entity noticed here** and namely alleged present WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE  and any appointment made by them, including all Trustee(s), Successor Trustee(s), Beneficiary(s), any and all successors, and/or substitutes.
..................................................................
**I, RICHARD ENRIQUE ULLOA hereby revoke and withdraw any and all power and authority in the matter of WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE  LOAN # 708-0139932685 conferred therein. YOU ARE NO LONGER TRUSTEE(s), SUCCESSOR TRUSTEE(s) or BENEFICIARY(s).  CEASE AND DESIST ALL ACTIONS OF ASSIGNMENT(s) or APPOINTMENT BY ABOVE ENTITY. CONTINUED ACTION MAY RESULT IN LEGAL ACTIONS AGAINST YOU.**

**Dated on the** $\underline{23}$ **day of** $\underline{November}$ **, 2009.**

**BY:** _____
          **RICHARD ENRIQUE ULLOA**
          **TRUSTOR/GRANTOR**

### Certificate of Acknowledgment of Notary Public

STATE OF NEW YORK          )
                                                ) ss
COUNTY OF ULSTER          )

On this $\underline{23}$ day of, $\underline{Nov'}$ , 2009 came before me the Affiants living flesh and blood woman to oath and attest and affirm the signature is true, complete, and correct on the foregoing affidavit.  Richard Enrique Ulloa undersigned, who is personally known by me or upon proper oath and identification a notary public in and for said state, personally appeared before me.

_____
Notary Public                        (seal)

KATHERINE A. CAIRO DAVIS
Notary Public, State of New York
4843340
Qualified in Ulster County
Commission Expires 07/31/2013

9

Exhibit G

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

**COPY**

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA | ☒ Conventional | ☐ Other (explain): | Agency Case Number | Lender Case No. |
|---|---|---|---|---|---|
| | ☐ FHA | ☐ USDA/Rural Housing Service | | | 0139932685 |

| Amount | Interest Rate | No. of Months | Amortization | | | |
|---|---|---|---|---|---|---|
| $ 182000.00 | 6.875 % | 360 | Type: | ☒ Fixed Rate | Other (explain): | |
| | NOT GUARANTEED | | | ☐ GPM  ☐ ARM (type): | FIX-30 | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 22 RIDGE MOUNTAIN, STONE RIDGE, NY 12484 | 01 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE ATTACHED LEGAL | |

| Purpose of Loan | ☐ Purchase | ☐ Construction | ☐ Other (explain): | Property will be: |
|---|---|---|---|---|
| | ☒ Refinance | ☐ Construction-Permanent | | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 1996 | $ 100000.00 | $ 165837.00 | CASH OUT | Cost: $ |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| RICHARD ULLOA AND LUIS RIVERA | JOINT TENANCY | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| EQUITY |

## III. BORROWER INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | | Co-Borrower's Name (include Jr. or Sr. if applicable) | |
| LUIS RIVERA | | | |

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | 845-687-7855 | 11/28/1947 | 16 | | | | |

| ☐ Married ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. ___ ages ___ | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ___ ages ___ |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 8 - 0 No. Yrs. | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|
| 22 RIDGE MOUNTAIN STONE RIDGE, NY 12484 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|
| | |

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Yrs. on this job 8 | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
| HOMEMAKER 22 RIDGE MOUNTAIN STONE RIDGE, NY 12484 | | Yrs. employed in this line of work/profession 8 | | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| N/A-N/A | 845-687-7855 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

EP225L Rev. 04/02/04

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income * | $ .00 | $ | $ | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 1195.62 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ | $ 1195.62 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**   *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly  [X] Not Jointly

| ASSETS | Cash or Market Value |
|---|---|
| Description | |
| Cash deposit toward purchase held by: | $ |
| List checking and savings accounts below | |
| Name and address of Bank, S&L, or Credit Union | |
| | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| | |
| Acct. no. | $ |
| Stocks & Bonds (Company name/number & description) | $ |
| | |
| Life insurance net cash value | $ |
| Face amount: $ | |
| Subtotal Liquid Assets | $ .00 |
| Real estate owned (enter market value from schedule of real estate owned) | $ |
| Vested interest in retirement fund | $ |
| Net worth of business(es) owned (attach financial statement) | $ |
| Automobiles owned (make and year) | $ |
| Other Assets (itemize) | $ |
| Total Assets a. | $ |

Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Payt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company | $ Payment/Months | $ |
| **BANK OF AMERICA** | 166.00/ | 2372.00 |
| | 14 | |
| Acct. no. 44271150 | | |
| Name and address of Company | $ Payment/Months | $ |
| **CBUSASEARS** | 18.00/ | 59.00 |
| | 6 | |
| Acct. no. 3592 | | |
| Name and address of Company | $ Payment/Months | $ |
| **CHASE NA** | 126.00/ | 6121.00 |
| | 49 | |
| Acct. no. 413590 | | |
| Name and address of Company | $ Payment/Months | $ |
| **CITI** | 165.00/ | 6603.00 |
| | 40 | |
| Acct. no. 54241801 | | |
| Name and address of Company | $ Payment/Months | $ |
| **CITI** | 102.00/ | 4096.00 |
| | 40 | |
| Acct. no. 54241803 | | |
| Name and address of Company | $ Payment/Months | $ |
| **UNVL/CITI** | 305.00/ | 14438.00 |
| | 47 | |
| Acct. no. 54911303 | | |
| Name and address of Company | $ Payment/Months | $ |
| | | |
| Acct. no. | | |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Job Related Expense (child care, union dues, etc.) | $ | |
| Total Monthly Payments | $ 874.08 | |
| Total Liabilities b. | $ | 33689.00 |

## VII. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VI. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 165657.00 |
| e. Estimated prepaid items | |
| f. Estimated closing costs | 7502.18 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 172939.18 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 182000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 182000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 9060.82- |

## VII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgements against you? | ☐ | ☒ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☒ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☒ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☒ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgement? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☒ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | ☒ | | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | ☒ | | ☐ |
| h. Is any part of the down payment borrowed? | | ☒ | | ☐ |
| i. Are you a co-maker or endorser on a note? | | ☒ | | ☐ |
| j. Are you a U.S. citizen? | ☒ | | ☐ | |
| k. Are you a permanent resident alien? | | ☒ | | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ | | | ☐ |
| m. Have you had an ownership interest in a property in the last 3 years? | ☐ | ☐ | ☐ | ☐ |

(1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)?

(2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)?

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors and assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property, and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 08/26/04 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| **BORROWER** ☒ I do not wish to furnish this information. | **CO-BORROWER** ☐ I do not wish to furnish this information. |
|---|---|
| **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino | **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| **Race:** ☐ American Indian or Alaskan Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | **Race:** ☐ American Indian or Alaskan Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| **Sex:** ☐ Female ☐ Male | **Sex:** ☐ Female ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | WFHM CMR-DM-PROSPECT CENTRAL | WFHM CMR-DM-PROSPECT CENTRAL |
| ☐ Face-to-face interview | Interviewer's Signature / Date | P.O. BOX 1629MAC# X4801-099 |
| ☐ Mail | | MPLS, MN 55440 |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (866) 262-1506 | |

| | Continuation Sheet/Residential Loan Application | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**LUIS RIVERA** | Agency Case Number: |
| | Co-Borrower: | Lender Case Number:<br>**0139932685** |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 08/26/04 | X | |

## Help To Stop Foreclosure Research and Analysis Reports
### Beekman Land Grant, Dutchess County, New York Republic

Without Prejudice • Private and Confidential Analysis

**Type of Report:** Forensic Mortgage Audit          **Date Prepared:** 11/18/2010
**Prepared for:** Richard Enrique Ulloa            **Prepared by:** ████████████████
**Loan ID:** Richard Enrique Ulloa - Loan 1

# FORENSIC MORTGAGE AUDIT REPORT

This report contains the results of a forensic mortgage audit which is a detailed analysis of mortgage documents and disclosures related to a loan that has been funded. The primary objective of this forensic mortgage audit is to determine compliance with applicable federal statutes and regulations governing the residential mortgage industry. The audit is performed to also evaluate the accuracy of lender computations and other information included in those mortgage documents. A forensic mortgage audit can provide numerous benefits to borrowers. It can be a critical tool for mortgage loan modifications, short sale agreement negotiations or foreclosure defense litigation. This report is based on information provided directly by or on behalf of the borrower.

Specific analytical tests were used to determine compliance with various federal regulations including the Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Home Ownership and Equity Protection Act (HOEPA) and Regulation Z. These tests included: a) the reverse engineering and calculation of all required TILA disclosure variables; b) a detailed analysis and review of all loan variables and features; c) an assessment of HOEPA and other disclosure requirements; d) analysis and correct computation of the rescission period; and e) a detailed examination of HUD-1 closing costs. A TILA payment schedule was also prepared with a detailed list of loan terms for informational purposes.   For all sections, "NA" indicates that the value, variable or result is not applicable or not available.

### SUMMARY OF FINDINGS

| Test/Disclosure | Audit Finding | Applicable Law | Result |
|---|---|---|---|
| Annual Percentage Rate | Understated by (1.367%) | TILA | VIOLATION |
| Finance Charge | Understated by $16,334.61 | TILA | VIOLATION |
| HOEPA/Section 32 | High-Cost Loan | HOEPA | FAIL |
| Rescission Period | Disclosure Not Provided | TILA | VIOLATION |
| Demand Feature | Disclosure Not Required | RESPA | PASS |
| Variable Rate | Disclosure Not Required | RESPA | PASS |
| Prepayment Penalty | Disclosure Not Required | RESPA | PASS |
| Balloon Payment | Disclosure Not Required | RESPA | PASS |

**IMPORTANT:**   If applicable, based on defense to foreclosure action and/or extended rescission rights.

**NOTE:**            The APR is considered accurate if Finance Charge is within allowable tolerances.

### FEES PAID BY OR ON BEHALF OF BORROWER

Total of origination, discount, lender, broker and yield spread premium fees.

| Amount | Percentage of Loan Amount |
|---|---|
| $19,278.98 | 9.235% |

## TRUTH IN LENDING: LOAN VARIABLES

This table shows whether the variance, if any, between the lender's actual disclosed values and the correctly calculated Truth in Lending values exceed the amount allowed by law.

|  | Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|---|
| Disclosed: | 6.951% | $125,413.40 | $204,491.73 | $329,905.13 |
| Calculated: | 8.318% | $141,748.01 | $188,158.13 | $329,906.14 |
| Variance: | (1.367%) | ($16,334.61) | $16,333.60 | ($1.01) |
| **RESULT:** | **FAIL** | **FAIL** | **NA** | **NA** |

## TRUTH IN LENDING: LOAN FEATURES

This table shows whether any disclosures for certain loan features were provided by the lender as required by law.  Note: NA indicates that a specific disclosure was not required but was provided by the lender.

|  | Demand | Variable Rate | Prepayment | Balloon |
|---|---|---|---|---|
| Disclosure Required: | NO | NO | NO | NO |
| Disclosure Provided: | NO | NO | NO | NO |
| **RESULT:** | **PASS** | **PASS** | **PASS** | **PASS** |

## HOEPA (Home Owner and Equity Protection Act)

This table shows whether any disclosures for certain "High-Cost" (Section 32) loans were provided as required by law.

|  | Rate-Based Test | Points & Fees Test |
|---|---|---|
| HOEPA Qualified: | YES | YES |
| Trigger Threshold: | 12.090% | $16,700.00 |
| Calculated: | 8.318% | $20,591.87 |
| **RESULT:** | **PASS** | **FAIL** |

## RESCISSION PERIOD

This table shows whether the three-day rescission period ending date as listed in the Notice of Right to Cancel disclosure was correctly calculated as required by law.

| Disclosed | Correct | Variance | Result |
|---|---|---|---|
| Not Provided | NA | NA | **FAIL** |

- 2 -

## HUD-1 SETTLEMENT STATEMENT

This table shows the amount, in dollars and percentage of loan amount, of various specific closing costs paid directly by the borrower and/or lender.

|  | **Origination** | **Discount** | **Lender** | **Broker** | **Yield Spread Premium (YSP)** |
|---|---|---|---|---|---|
| Amount: | $0.00 | $0.00 | $19,278.98 | $0.00 | $0.00 |
| Percent of Loan: | 0.000% | 0.000% | 9.235% | 0.000% | 0.000% |

## LOAN PROFILE

This table lists the various features and characteristics that describe the profile of the loan, borrower and property.

| Loan Type: | Fixed Rate | Interest Only (mos): | NO |
|---|---|---|---|
| Loan Purpose: | Refinance (Cash out) | Demand Feature: | NO |
| Loan Note Date: | 1/26/2005 | Balloon Payment (mos): | NO |
| Negative Amortization: | NO | Prepayment Penalty (mos): | NO |
| Loan-to-Value (LTV): | 104.38% | Mortgage Insurance: | NO |

## BORROWER PROFILE

| Gross Monthly Income: | $4,166.00 | Debt-to-Income (DTI): | 49.66% |
|---|---|---|---|

## PROPERTY PROFILE

| Property Type: | Primary Residence | Property Value: | $200,000.00 |
|---|---|---|---|

## MORTGAGE VARIABLES

This table lists all the variables describing this loan including loan amount, rate, term, initial payment, first payment due date and the factors that determine any possible future changes to the rates and/or payments.

| Amount: | $208,750.00 | Initial Increase Rate Limit: | NA |
|---|---|---|---|
| Initial Rate: | 6.625% | Initial Decrease Rate Limit: | NA |
| Term (mos): | 180 | Periodic Increase Limit: | NA |
| Initial Payment: | $1,832.81 | Periodic Decrease Limit: | NA |
| First Payment Date: | 3/1/2005 | Lifetime Maximum: | NA |
| Initial Rate Change Date: | NA | Lifetime Minimum: | NA |
| Periodic Rate Changes (mos): | NA | Initial Payment Change Date: | NA |
| Index: | NA | Periodic Payment Changes (mos): | NA |
| Margin: | NA | Payment Change Cap: | NA |
| Rounding: | NA | Maximum Loan Balance: | NA |

### TRUTH IN LENDING PAYMENT SCHEDULE

This table shows the correct Truth in Lending payment schedule, as required by law, that is based on the various loan variables contained in the mortgage note and other related mortgage documents.

| Number of Payments | Payment Amount | Date Beginning |
|---|---|---|
| 179 | $1,832.81 | 3/1/2005 |
| 1 | $1,833.15 | 2/1/2020 |

# Addendum A

## BRIEF DESCRIPTIONS OF REPORT SECTIONS

**Summary of Findings:**  Various tests and/or disclosures that were evaluated and audit finding, the applicable law and the result of the individual test or disclosure analysis.

**Fees Paid by or on Behalf of Borrower:**  Dollar amount and percentage, of any origination, discount, lender, broker or yield spread premium fees paid directly by or on behalf of the borrower.

**Truth in Lending: Loan Variables:**  Variance  between the disclosed and correctly calculated amounts for the Annual Percentage Rate, Finance Charge, Amount Financed and Total of Payments.

**Truth in Lending: Loan Features:**  Required loan disclosures provided by the lender, demand feature, variable rate, prepayment and balloon payment.

**HOEPA/Section 32:**  Threshold tests for determining HOEPA compliance.

**Rescission Period:**  Correct calculation of the rescission period.

**HUD-1 Settlement Statement:**  Detailed breakdown of borrower fees and costs including origination, discount, lender, broker and yield spread premium.

**Loan Profile:**  Loan  features  including  type  and  purpose,  negative amortization,  loan-to-value  ratio,  interest-only,  balloon payment, prepayment penalty and mortgage insurance.

**Borrower Profile:**  Borrower's gross monthly income and debt-to-income (DTI) ratio.

**Property Profile:**  Property  type  and  the  property  value  as  determined  by appraised value and/or sales price.

**Mortgage Variables:**  Loan amount, rate, term, initial payment, rate and payment change dates and other ARM variables.

**Truth in Lending Payment Schedule:**  Correct payment schedule based on the loan note.

# Addendum B

## TRUTH IN LENDING ACT, REG. Z AND HOEPA/SECTION 32

The Truth in Lending Act (TILA), (15 USC 1601 et seq.), was enacted on Mary 29, 1968, as title I of the Consumer Credit Protection Act (Pub. L. 90-321). The TILA, implemented by Regulation Z (12 CFR 226), became effective July 1, 1969. The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and cost. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes. The regulation does not govern charges for consumer credit. The regulation requires a maximum interest rate to be stated in variable-rate contracts secured by the consumer's dwelling. It also imposes limitations on home-equity plans that are subject to the requirements of §226.5b and mortgages that are subject to the requirements of §226.32. The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling. The regulation also regulates certain practices of creditors who extend private education loans as defined in §226.46(b)(5). Following are selected details of certain sections of the act that apply to residential closed-end credit with terms greater than ten years and originated after September 30, 1995.

### Accuracy Tolerances §226.18(d) & §226.23(h)

The disclosed Annual Percentage Rate (APR) on a closed-end transaction is accurate for Regular transactions (which include any single advance transaction with equal payment and equal payment periods, or an irregular first payment period and/or a first or later irregular payment), if it is within one-eighth of one percentage point of the APR calculated under Regulation Z (§226.22 (a)(2)), and for Irregular transactions (which include multiple advance transactions and other transaction not considered regular), if it is within one-quarter of one percentage point of the APR calculated under Regulation Z (§226.22(a)(3))

The disclosed Finance Charge is considered accurate if it does not vary from the actual finance charge by more than $100. §226.18(d)(i) and overstatements are not violations. §226.18(d)(1)(ii)

### Rescission Rights (Open-End and Closed-End Credit) §226.15 and §226.23

TILA provides that for certain transactions secured by the consumer's principal dwelling, a consumer has three business days after becoming obligated on the debt to rescind the transaction. The right of rescission allows consumer(s) time to reexamine their credit agreements and cost disclosures and to reconsider whether they want to place their homes at risk by offering it/them as security for the credit. Transactions exempt from the right of rescission include residential mortgage transactions (§226.2(a)(24)) and refinancings or consolidations with the original creditor where no "new money" is advanced.

If a transaction is rescindable, consumers must be given a notice explaining that the creditor has a security interest in the consumer's home, that the consumer may rescind, how the consumer may rescind, the effects of rescission, and the date the rescission period expires.

To rescind a transaction, a consumer must notify the creditor in writing by midnight of the third business day after the latest of three events: consummation of the transaction; delivery of material TILA disclosures, or receipt of the required notice of the right to rescind.

For purposes of rescission, business day means every calendar day except Sundays and the legal public holidays (§226.2(a)(6)). The term material disclosures is defined in §226.23(a)(3) to mean the required disclosures of the APR, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §226.32(c) and (d).

- 6 -

The creditor may not disburse any monies (except into an escrow account) and may not provide services or materials until the three-day rescission period has elapsed and the creditor is reasonably satisfied that the consumer has not rescinded. If the consumer rescinds the transaction, the creditor must refund all amounts paid by the consumer (even amounts disbursed to third parties) and terminate its security interest in the consumer's home.

A consumer may waive the three-day rescission period and receive immediate access to loan proceeds if the consumer has a "bona fide personal financial emergency." The consumer must give the creditor a signed and dated waiver statement that describes the emergency, specifically waives the right, and bears the signatures of all consumers entitled to rescind the transaction. The consumer provides the explanation for the bona fide personal financial emergency, but the creditor decides the sufficiency of the emergency.

If the required rescission notice or material TILA disclosures are not delivered or if they are inaccurate, the consumer's right to rescind may be extended from three days after becoming obligated on a loan to up to three years.

### Rescission Rights after the Three Day Rescission Period
The disclosed finance charge is considered accurate as follows: The disclosed finance charge is considered accurate if it does not vary from the actual finance charge by more than one-half of one percent of the credit extended. §226.23(g)(1)(i); The disclosed finance charge is considered accurate if it does not vary from the actual finance charge by more than one percent of the credit extended for the initial and subsequent refinancing or residential mortgage transactions when the new loan is made at a different financial institution. (This excludes high cost mortgage loans subject to §226.32, transactions in which there are new advances, and new consolidations.) §226.32(g)(2)(i)

### Rescission Rights in Foreclosures
In a foreclosure defense situation, the allowed variances are as follows: The disclosed finance charge is considered accurate if it does not vary from the actual finance charge by more than $35. §226.23(h)(2)(i); Overstatements of disclosed finance charge are not considered violations. §226.23(h)(2) (ii); the consumer can rescind if a mortgage broker fee is not included as a finance charge.§226.23(h)(1)(i)

### Subpart D - Miscellaneous
If a creditor fails to comply with any requirements of the TILA, other than with the advertising provisions of chapter 3, it may be held liable to the consumer for: actual damage and the cost of any legal action together with reasonable attorney's fees in a successful action.

If it violates certain requirements of the TILA, the creditor also may be held liable for either of the following: in an individual action, twice the amount of the finance charge involved, but not less than $100 or more than $1,000. However, in an individual action relating to a closed-end credit transaction secured by real property or a dwelling, twice the amount of the finance charge involved, but not less than $200 or more than $2,000, or, in a class action, such amount as the court may allow. The total amount of recovery, however, cannot be more than $500,000 or one percent of the creditor's net worth, whichever is less.

Civil actions that may be brought against a creditor also may be maintained against any assignee of the creditor if the violation is apparent on the face of the disclosure statement or other documents assigned, except where the assignment was involuntary.

A creditor that fails to comply with TILA's requirements for high-cost mortgage loans may be held liable to the consumer for all finance charges and fees paid to the creditor. Any subsequent assignee is subject to all claims and defenses that the consumer could assert against the creditor, unless the assignee demonstrates that it could not reasonably have determined that the loan was subject to §226.32.

Criminal Liability §112: Anyone who willingly and knowingly fails to comply with any requirement of the TILA will be fined not more than $5,000 or imprisoned not more than one year, or both.

Administrative Actions §108: The TILA authorizes federal regulatory agencies to require financial institutions to make monetary and other adjustments to the consumers' accounts when the true finance charge or APR exceeds the disclosed finance charge or APR by more than a specified accuracy tolerance. That authorization extends to unintentional errors, including isolated violations (e.g., an error that occurred only once or errors, often without a common cause, that occurred infrequently and randomly).

Under certain circumstances, the TILA requires federal regulatory agencies to order financial institutions to reimburse consumers when understatement of the APR or finance charge involves: Patterns or practices of violations (e.g., errors that occurred, often with a common cause, consistently or frequently, reflecting a pattern with a specific type or types of consumer credit); Gross negligence; or Willful noncompliance intended to mislead the person to whom the credit was extended.

Any proceeding that may be brought by a regulatory agency against a creditor may be maintained against any assignee of the creditor if the violation is apparent on the face of the disclosure statement or other documents assigned, except where the assignment was involuntary. (§131)

### Certain Closed-End Home Mortgages §226.32 (Section 32 Loans)
The requirements of this section apply to a consumer credit transaction secured by the consumer's principal dwelling, in which either: The APR at consummation will exceed by more than 8 percentage points for first-lien mortgage loans, or by more than 10 percentage points for subordinate-lien mortgage loans, the yield on Treasury securities having comparable periods of maturity to the loan's maturity (as of the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor); or The total points and fees (see definition below) payable by the consumer at or before loan closing will exceed the greater of eight percent of the total loan amount or $583 for the calendar year 2009. (This dollar amount is adjusted annually based on changes in the Consumer Price Index. See staff commentary to 32(a)(1)(ii) for a historical list of dollar amount adjustments.) (§226.32(a)(1)). Source: Portions excerpted from FDIC, Federal Reserve.

This report is not intended to be a substitute for legal advice. Loantech assumes no responsibility for errors or omissions. Under no circumstances will Loantech, its officer or agents be liable to the user or any third party for any damages associated directly or indirectly with this product, including but without limitation, special, incidental, consequential, contractual or other damages. "NA" denotes not available or not applicable. Material may not be reproduced in whole or in part in any form whatsoever without express written permission of Loantech LLC. All violators will be prosecuted to the fullest extent of the law. Forensic Mortgage Auditor is a trademark of Loantech LLC. © Copyright 2009 Loantech LLC. All Rights Reserved.